*P. L. Spooner*, for the appellants.

*D. S. Major*, for the appellees.

———————•◦•———————

COX <i>v.</i> REYNOLDS.

If a tract of land be sold with a representation that it contains a certain number of acres, and there be a deficiency in quantity, the vendor, if he prefers to retain the land, and to set up the misrepresentation in reduction of the price, is entitled to an abatement of the purchase-money for so much only as the quantity falls short of the representation.

If the vendor falsely represent that the tract contains a particular parcel of land—which is of no value except for the site of a mill-dam—the vendee would seem to be entitled to no greater abatement of the purchase-money than the cost of procuring it.

VOL. VII.—17

Nov. Term,
**1855.**

Cox
v.
REYNOLDS.

In a suit by the vendor to recover one of several instalments of purchase-money, if the purchaser, by reason of false representations of the vendor, is entitled to an abatement, though to an amount less than subsequent instalments, it is his right to have that abatement made in such suit.

*A.* sold a mill to *B.* At the time of the sale, *A.* had in his service, as miller, one *C.*, who, after the sale, continued in the mill, in the same employment, as the servant of *B.* *A.*, when he sold the mill, had a quantity of wheat of his own therein, which he left, after the sale, to be manufactured into flour, which fact *C.* knew.

*Held*, that *B.*, under the circumstances, became a bailee of the wheat for reward—responsible for its safe keeping and for the return of the flour manufactured therefrom to *A.*

*Held*, also, that whether *B.* had personal knowledge that *A.* had so left the wheat, was unimportant.

*Held*, also, that if *B.* or his servants used or disposed of the wheat, assumpsit would lie against *B.*, without any previous demand of the wheat.

Thursday,
December 13.

APPEAL from the *Henry* Circuit Court.

DAVISON, J.—Assumpsit. The declaration contains four counts. The first is upon a promissory note for 218 dollars. The second and third are in substance the same. They aver that the defendant was a miller, and at his request the plaintiff had delivered to him four hundred bushels of wheat, to be safely kept, manufactured into flour, and returned to the plaintiff for a reasonable reward; yet the defendant had not manufactured said wheat and re-delivered it, nor had he safely kept the same, but, on the contrary, he had carelessly, &c., allowed it to be taken and carried away by his servants, and, without the plaintiff's authority, sold, wasted and destroyed, &c. The fourth count raises no point in the case.

Pleas, 1. The general issue. 2. That the note is without consideration. 3. That it was given to secure, in part, the purchase-money of a certain mill, and mill privileges, and land thereto attached; that before and at the time the note was executed, the plaintiff falsely represented that said land embraced both banks of the stream on which the mill is situate, at or near the place where a certain county road crosses said stream, about three hundred yards below the place where the dam now belonging to said mill is situate, and which forms the most valuable location for said mill, and without which said mill privi-

leges are of less value by 500 dollars; when, in truth, &c., the plaintiff did not own both banks of the stream, &c. There is also a plea of set-off.

These pleas led to issues of fact. Verdict against the defendant for 125 dollars. New trial refused, and judgment. From this judgment the plaintiff appeals to this Court.

The evidence is not all before us. It appears, however, to be conceded that the note sued on, with three other notes, for 400 dollars each, not yet due, was given by *Reynolds* to *Cox* for a mill and an acre and a half of land; that when *Cox* sold the mill, he had in his employ, as miller, one *Pike*, who, after the sale, continued in the employment of *Reynolds* as his miller; that *Cox*, before the sale, had purchased and put into the mill four hundred bushels of wheat, which, at the time of the sale, was in the mill, and which he left there to be manufactured into flour.

At the proper time, the plaintiff moved the Court to instruct the jury substantially as follows:

1. If, before the trade was consummated, the plaintiff represented to the defendant that he was the owner of the tract which he proposed to sell, and that it contained an acre and a half of land, and the deed made pursuant to the sale did not contain that quantity, the defendant would only be entitled to an abatement of so much of the purchase-money as the land not conveyed is really worth.

2. If the deed contains one acre and a half, the quantity sold, but the plaintiff, at the time of the sale, misrepresented the land as to its locality, and if the land represented to be in the tract, but not conveyed, is only valuable for the construction of a new dam, and to be overflowed by the pool of a dam, which land the defendant can procure by writ of *ad quod damnum* or otherwise, he would be only entitled to an abatement equal to the cost of procuring it.

3. If *Cox* sold *Reynolds* a mill property for 4,000 dollars, of which there is still unpaid 1,200 dollars, exclusive of the note in suit, and if, at the time of the trade, *Cox* represented that the boundaries included ground not covered by

his deed to *Reynolds*, and *Reynolds* would therefore be entitled to some abatement in the price, still if the abatement to which he is entitled is not found to be in amount equal to the three last payments not yet due and unpaid, he can not make such abatement a defence to this suit.

4. If, while *Cox* owned the property, he took to the mill a quantity of wheat to be ground, and if, when he sold to *Reynolds*, the same wheat was then in the mill, of which *Pike*, the miller, had notice; and if *Reynolds* continued *Pike* as his miller, in charge of the mill and its business, and if *Cox's* wheat was used and disposed of by *Pike* and others in the employ of *Reynolds* as millers, while they were his millers and agents, *Reynolds* is responsible for the wheat, though he may have had no personal notice that *Cox* had wheat in the mill.

The record contains a bill of exceptions wherein it is averred that the above instructions were pertinent to the evidence. They were, however, overruled by the Court.

The first instruction desired should have been given. It no doubt expresses the law correctly. The rule is that "if a tract of land be sold with a representation that it contains a certain number of acres, and there be a deficiency in quantity, the vendee is entitled to an abatement of the purchase-money for so much as the quantity falls short of the representation." *Howk* v. *Pollard*, 6 Blackf. 108. Where the vendee prefers to keep the land as it is, and to set up the misrepresentation in avoidance as to part of the price, we think he has not, in any event, a right to claim an abatement of more than the value of the land not conveyed. 1 Sugd. Vend. 383.—*Hill* v. *Buckley*, 17 Ves. 394.

The second instruction assumes the ground that, though the deed contains the number of acres in contemplation of the parties when they contracted, yet its boundaries do not, in accordance with the vendor's representations, include a certain locality valuable alone for a dam and the pool of a dam. Now it was for the jury to consider how much less the land actually conveyed is worth, than it would have been, had it not varied from the local descrip-

tion pointed out by the vendor. The vendee being deceived by the representation, was of course entitled to some abatement of the purchase-money. How was such abatement to be measured? If, as assumed, the land in question is of no value, except for the purposes indicated, the cost of procuring it for those purposes would seem to be its real value, which would, in our opinion, be the full amount of the abatement to which the vendee is entitled. This rule of estimating the amount to be deducted from the purchase-money does not favor the vendor. He moved the instruction, and we think it should have been sustained.

In support of the third instruction, it is said, that "the failure of consideration, if any existed, was partial, and in value inconsiderable, and as the defendant had in his own hands ample indemnity to secure him, he could not, therefore, plead such failure to the note in suit, but must make his defence to the last note." The force of this reasoning is not perceivable. The plaintiff cites no authority applicable to the point involved in the instruction, nor do we know of any. If, as conceded by the proposed charge, the vendee was deceived in his purchase of the land by the false representations of the vendor, his right to be compensated for the deception accrued at once, and there seems to be no reason why he should not be at liberty, within the rules of law, to choose his own time for the assertion of such right. To compel him, in the present case, to withhold his defence until the last note had become due, would be a mere favor to the vendor; but the law extends no favors to a fraudulent party. This instruction was properly refused.

The refusal of the Court to sustain the fourth instruction, presents the next inquiry. We have seen that when the plaintiff sold the property, he had in his service one *Pike*, who afterwards continued in the employment of *Reynolds* as his miller, and that he, the plaintiff, then had in the mill a certain quantity of wheat, which he left there to be manufactured into flour. The wheat being in the mill, it is not important, in the consideration of the point

before us, whether it was put there before or after the mill went into the defendant's possession, because it was there with the knowledge of *Pike*, who had charge of the mill and its business as the defendant's agent; and the rule is well established, if not elementary, that notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from, or is at the time connected with, the subject matter of the agency. *Story* on Agency, s. 140.— *Varnum* v. *Milford*, 4 McLean 93. For upon general principles of public policy, it is presumed that the agent has communicated such facts to the principal. When a mill changes owners, the law does not make it incumbent on each of its customers who has wheat, or other grain, in the mill, to be manufactured, to give notice of that fact to the new owner, especially when the agent of the former proprietor is retained by the latter. The position of the plaintiff is, in principle, nothing different from that of a regular customer to the defendant's mill. But here there was a bailment; for though the wheat itself was not to be re-delivered, yet it was to be safely kept, and the identical flour manufactured from it returned to the plaintiff. It follows that the defendant incurred all the responsibilities of a bailee for reward, and if he himself had converted the thing bailed to his own use, he would be liable in this action, without any demand preceding the suit. *Story* on Bailments, s. 107.— *Smith* v. *Stewart*, 5 Ind. R. 220.

But the instruction is grounded on the assumed fact that the defendant's agent, *Pike*, used and disposed of the wheat. By this we understand that he converted it to his own use. Now, is the principal liable for the conduct of his agent? If he is, a demand before suit was not requisite, because there could be no propriety in such demand when the property bailed had been used and disposed of, and, in sequence, the bailment at an end. *Smith* v. *Stewart*, *supra*. Mr. *Story* says, that a principal "is held liable to third persons, in a civil suit, for frauds, deceits, torts and other malfeasances of his agent in the course of his employment, although he did not authorize, or justify,

or participate in, or, indeed, know of such misconduct. In all such cases the rule applies, *respondeat superior.*" Story on Agency, s. 452. We think the last instruction involves a correct exposition of the law, and should therefore have been given to the jury.

For the refusal to give the first, second and fourth instructions, the judgment must be reversed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*M. L. Bundy,* for the appellant.
*W. Grose* and *C. H. Test,* for the appellee.