B. F. WALKER *v.* J. G. JEFFRIES et al.

CONTRACT — CONSIDERATION — MERE KNOWLEDGE OF THE LENDER OF ILLEGAL PURPOSE FOR WHICH THE MONEY IS WANTED DOES NOT VITIATE LOAN. — A loan of money which the lender knew was wanted for the equipment of a company of cavalry to serve the Confederate States, in the late war between the states, but without any stipulation in the contract to that effect, the borrowers being left free by the terms of the contract to use the money as they saw fit, is valid, and the money thus loaned may be recovered.

ERROR to the circuit court of Panola county. CLAYTON, J.

The facts are fully stated in the opinion of the court.

*Watson & Manning,* for plaintiff in error.

We will consider but one proposition of law involved in this case : Is the lending of money, knowing the borrower will make an illegal use of it, sufficient of itself to deprive the lender of the right to recover ?  The mere knowledge of the illegal purpose for which money is borrowed will not at all affect the validity of the contract; but there must be on the part of the lender some participation or interest in the act itself.  The illegal use to be made of the money loaned must enter into the contract, must be a condition precedent, must form the motive and inducement in the mind of the lender, and the money must be used to carry out the contemplated design before the recovery can be defeated. Holman v. Johnston, Cowp. 343 ; Hedges v. Wallace, 2 Bush (Ky.), 442 ; Holt v. Barton, 42 Miss. 711.

The facts in this case, that the money sued for was used to equip a military company, and that Walker, the lender, knew for what purpose it was to be used, do not vitiate the transaction.  Briggs v. Lawrence, 3 Term R. 454 ; Phillips v. Hooker, Am. Law Reg. Nov. 1867, p. 40 ; Data v. Earl, 3 Gray (Mass.), 482 ; 4 Dana, 381 ; Kriess v. Seligman, 8 Barb. 439 ; Hodgson v. Temple, 5 Taunt. 181 ; Armfield v. Tate, 7 Ired. (N. C.) 259 ; Armstrong v. Tolla, 11 Wheat. 258 ; Hilliard on Sales, 376 ; Story's Conflict of Laws, § 253 ; 8 Wall. 1 ; 2 ib. 70 ; 1 Heiskell (Tenn.), 119, 319.

*White & Chalmers,* for defendants in error.

It is too plain for argument that this note cannot be recov ered on.  To permit it to be done would be to directly enforce a contract which has for its sole and avowed object the aiding of the rebellion.  The suit is upon the note given for money advanced for the distinct and avowed purpose of equipping the company.  It is just as if plaintiff had sold the company the arms, and now brought suit for the price.  In fact a portion of the money never was paid either to the company or to the makers of the note, but to men who

furnished the arms. 6 Wall. 521 ; Cappell v. Hall, 7 ib. 542 ; Barter v. Coleman, 4 Pet. 189.

There is no error in the refusal of the court to charge the jury as plaintiff requested. The charges asserted the doubtful position of law, that the full knowledge upon the part of the plaintiff, that his money was to be used for an illegal purpose, would not render the contract void, unless he loaned it for that express purpose, and none other. This charge embodied an unsound principle of law and was correctly refused. Herin v. McCaughn, 32 Miss. 18 ; Wright v. Clarke, ib. 116 ; Garnett v. Kirkman, 33 ib. 389 ; Powell v. Mills, 37 ib. 692.

*Walter & Scruggs*, on same side.

The money for which the note was given was loaned by the plaintiff and used to arm and equip a company raised for the Confederate service ; it was part of the contract, for the plaintiff agreed to let the company have the money, provided certain of the defendants would give their note for it. Plaintiff was an officer in the company, and knew all these facts. If the contract then was made in furtherance of an illegal design, or to aid in carrying on war against the United States, it cannot be enforced. 14 How. 38 ; 4 Humph. 131 ; 3 Head, 297 ; ib. 723 ; also, Thorington v. Smith, 8 Wall. ; Brown v. Gillem, 43 Miss. 641 ; Brooks v. Martin, 2 Wall. 70.

TARBELL, J. :

On the 12th day of August, 1861, James G. Jeffries and forty others entered into a written obligation in the ordinary form of a promissory note, with a "seal," however, added to their respective signatures, by which the signers jointly and severally promised, for value received, to pay B. F. Walker or order the sum of $3,882 32, one day after its date, with interest at 10 per cent. To recover the amount due on this note, the payee instituted a suit against the makers, in the circuit court of Panola county, in May,

1867. At the November term of that court the defendants appeared and interposed three special pleas, setting up an illegal consideration. The first avers, that "the writing obligatory sued on was executed by them for the loan to them by plaintiff of the sum of money therein specified, which said loan was made by plaintiff to defendants, with an agreement between plaintiff and defendants, that defendants should use said money to arm and equip a company of men, known as the De Soto light dragoons, for the purpose of carrying on a war against the government of the United States. Defendants say that said money was used for the purpose, and that the consideration aforesaid was the only consideration of said writing obligatory," etc. The second states, that the plaintiff being a member of said military company, and desirous of aiding the organization in procuring uniforms and equipments, proposed to the defendants that if they would execute and deliver to him the writing obligatory sued on, he would loan to the company the money specified to assist in the purchase of arms, etc., to enable the company to engage in war against the United States ; that the writing was executed and the money loaned in consideration of such understanding and purpose ; that the money was used by the company in the purchase of uniforms, arms, etc., and that the writing was executed for such consideration and purpose and none other.

The third alleges, that "the company aforesaid was organized by the government of the Confederate States to make war on the United States," and then proceeds as in the second.

The plaintiff demurred to these pleas, but the court overruled the demurrer, when the plaintiff replied, denying their truth and taking issue thereon.

Upon this issue the cause was tried at the November term, 1868, of the circuit court, resulting in a verdict for defendants. A motion for a new trial upon the following grounds : 1st. The court erroneously refused to charge the jury on plaintiff's motion; 2d. The court erroneously charged

the jury on the motion of the defendants; and, 3d. Said verdict is contrary to law and the evidence," was overruled.

The instructions of the court upon which the jury acted were, on the part of plaintiff, as follows: "1st. In the trial of the issue in this cause, the burden of proof is upon the defendants, and it is incumbent on them to establish the defense set up to the reasonable satisfaction of the jury, and, unless the jury are so reasonably satisfied, they will find for the plaintiff; 2d. Unless the jury believe from the testimony that the defendants' pleas, or one of them, have been proved, they will find for the plaintiff."

On request of defendants, the court gave the following charge: "If the jury believe from the evidence that a company of soldiers called the De Soto light dragoons was raised for the service of the Confederate States, and to carry on the war then being waged against the United States, and that the plaintiff loaned the money sued for, for the purpose of arming and equipping said company, and that the money was used for that purpose, and that the writing sued on was given to secure the repayment of said money, then the law is with defendants, and the jury must find for them."

The court refused to give the following instructions requested by plaintiff: "1st. If the jury believe from the testimony that the consideration of the writing obligatory sued upon was money loaned by the plaintiff to defendant, not upon any agreement that the money should be used for the purpose of arming and equipping a military company to engage in the war against the government of the United States, but simply with a knowledge on the part of the plaintiff, that defendants intended to use it for that purpose, then the consideration is not illegal;" and "2d. If the jury believe from the testimony that the plaintiff refused to loan money to any member of a military company, who were about to engage in war against the government of the United States, but that he loaned to others, the defendants, who did not belong to any military organization, with a

knowledge that the defendants intended to use it for the purpose of arming and equipping such military company, then the consideration is not illegal."

The record contains a bill of exceptions giving in full the testimony elicited on the trial, together with the exceptions taken by the plaintiff to the rulings of the court. The following are alleged as errors of the court below : 1st. The court erroneously overruled plaintiff's demurrer to defendant's pleas ; 2d. The court erroneously refused to give to the jury the first and second charges asked for plaintiff; 3d. The court erroneously gave to the jury the first and second charges asked by defendants ; 4th. The verdict is contrary to law and evidence ; 5th. The court erroneously refused to set aside the verdict and grant the plaintiff a new trial.

Waiving a discussion of the questions raised by the demurrer to the pleas as unnecessary, if not unprofitable, we shall confine our examination of this case to the solitary point presented by the two instructions on behalf of the plaintiff, refused by the court. The proposition for our solution is this, if the consideration of the writing sued on was money loaned by the plaintiff to the defendants, not upon any agreement that the money should be used for arming and equipping a military company to engage in war against the government of the United States, but simply with a knowledge on the part of the plaintiff that the defendants so intended to use the money, is the obligation or contract in such case legal ?

Since the cases of Brooks v. Martin, 2 Wall. 70, and Gilliam v. Brown, 43 Miss. 641, there can be no doubt as to the answer to this question. The transaction in the case at bar is, as were the transactions in the authorities referred to, past and executed. The war, in the progress of which the note sued on was created, is terminated. All the parties to this suit were alike hostile to the United States government, and they were severally amenable to its violated laws. For their unlawful acts, the government had the option to prose-

cute and punish these parties. As to the successful government, so far as the transactions involved in this litigation are concerned, they are also now of the past. This action is instituted to settle the rights of parties, who were all alike citizens of the states engaged in war against the United States, to mutual transactions pending hostilities. Were this an action to recover the purchase price of the arms and equipments which this money, according to the evidence, paid for, the case would be entirely different. It is alleged by the defense, and the proof goes to show, that the note upon which this suit is brought was given for the loan of money in the expectation that the money so obtained would be devoted to arm and equip troops to be employed in hostility to the federal authority, and that it was so used. There is, however, no proof of a requirement or condition, insisted upon by the plaintiff, that the money should be so appropriated by the borrowers. For aught that appears, the defendants were at liberty to divert the funds so obtained to any purpose whatever, in their discretion. The anticipation, the desire, the mental anxiety of the plaintiff in that transaction, it seems to us, can scarcely be the subject of investigation. It is too metaphysical and too difficult of determination. A review in detail of the adjudications upon the question under consideration would, doubtless, disclose the fact that, twenty-five years ago, perhaps, the courts of some of the states, if not of other countries, would have admitted, as a part of the controversy, the mental purposes of the plaintiff in making the loan. An analysis of the mind of the plaintiff, however, in the determination of the rights of these parties, would seem to be, upon principle, inadmissible. We conceive it to be the contract, not the intention or mental purpose, or expectation of either or of all these parties, which ought to control this question in the light of the more recent adjudications as well as of some of the best English authorities of an older date. The duties and obligations of these parties, growing out of this transaction, are new to each other, irrespective of their individual

turpitude to the government. The money was loaned upon the note of responsible civilians at a remunerative interest. The plaintiff was no doubt impelled by several considerations, one naturally to secure the return of the money to his family, another, perhaps, to obtain a high rate of interest, and, very likely, a third, to contribute to the equipment of the military company of which he was a member. This last motive, however, does not appear to have been a condition of the contract of loan, either verbally or in writing. Upon the face of the obligation sued on it is wholly disconnected from all illegality, and it is quite as probable he was governed in the arrangement as much by his avarice or his devotion to his family as by his desire to serve the confederacy. The note is in the usual form ; the money was voluntarily expended by the defendants without stipulation or agreement so to do, in the purchase of arms and equipments for those engaged in war against the government ; the war has closed ; the note is unpaid ; and these parties now appeal to the courts of the conquering government to determine whether this money so loaned and so expended shall be refunded. It has been held by a most distinguished jurist, and his declaration is the judgment of an enlightened public sentiment, that a defense like that here interposed comes with an ill grace, from one of the parties to the alleged illegal consideration, and the courts have been struggling and advancing upon this subject for half a century. The leading cases are Armstrong v. Tole, 11 Wheat. 258 ; Kreiss v. Seligman, 8 Barb. 439 ; Martin v. Brooks, 2 Wall. 70 ; Gilliam v. Brown, 43 Miss. 641.

In these cases previous adjudications are fully presented and reviewed. The views of this court, as at present organized, are given, upon very mature deliberation, in Gilliam v. Brown, *supra*. The affirmative of the proposition propounded in the opening of this opinion has been declared upon a full review of the authorities in Hodgson v. Temple, 5 Taunt. 181 ; Dater v. Earl, 3 Gray, 482 ; Armfield v. Tate, 7 Ind. 259 ; Kreiss v. Seligman, 8 Barb. ; 4 Dana, 351 ;

Briggs v. Laurence, 3 Term R. 454; Martin v. Brooks, 2 Wall. 70; Gilliam v. Brown; Hilliard on Sales, 376; Story's Conflict of Laws, §253.

This doctrine was declared by such eminent jurists as Ch. J. Mansfield, Ch. J. Marshall and others, and may no longer be considered a mooted question, if, indeed, it has been for more than a quarter of a century, though in some instances it has been pronounced with slight qualifications and some hesitation.

The rise, progress and establishment of this doctrine is traced in Gilliam v. Brown, and the principle on which it is based is therein enunciated. It has been observed, say the court in that case, that "the test, whether a demand, connected with an illegal act, can be enforced, is whether the plaintiff requires any aid from the illegal transaction to establish his case." In the controversy under consideration most clearly no such aid is required. The case at bar is manifestly similar to the loan of money to be staked on a horse race, or other venture prohibited by law, the courts holding the illegal use to be made of the money to be no bar to its recovery by the lender. The affirmative adjudications upon the proposition under discussion have proceeded upon the fact that the illegal contracts, which, in a direct proceeding thereon, the courts would not enforce, which have been past and executed, and the actions have been based upon a subsequent consideration, or that the contracts which have been upheld were subsequent or collateral to the illegal transaction.

In Armstrong v. Toler, *supra*, Ch. J. Marshall, delivering the opinion of the court, says: "Questions upon illegal contracts have arisen very often both in England and in this country, and no principle is better settled than that no action can be maintained on a contract, the consideration of which is either wicked in itself, or prohibited by law. How far this principle is to affect subsequent and collateral contracts, the direct and immediate consideration of which is not wicked or illegal, is a question of considerable intri-

cacy, on which many controversies have arisen, and many decisions have been made." The eminent chief justice then proceeds in a lengthy opinion, to refer to the cases on the subject, in the course of which he propounds the doctrine contended for by counsel for plaintiff in error.

Referring to executed contracts of an illegal character, the court, in Gilliam v. Brown, say: "All the harm that can inure to the public by an infraction of law has already accrued; and it were to encourage hypocrisy and dishonesty to permit a party, fresh from the violation of law, to set up his own turpitude as a shield and protection against a division of the gains," etc. "Within the range of the same doctrine is embraced the case of him who confides his money or his property to another, to be embarked in an illegal traffic. After the dealings are over and the business ended, the money realized shall be regarded as had and received for the plaintiff's use, and an implied *assumpsit* to account for it." "While affording this relief the courts are not obnoxious to the imputation of giving effect to illegal contracts, or encouraging immoral acts. In all these cases the violation of law has already been accomplished, and one party is found in possession of money which belongs to another, and no detriment can arise further by raising an *assumpsit* to pay it over to the principal."

We quote from adjudications, wherein the object was to recover money accruing from an illegal traffic, but we regard the claim at bar as standing on the same principle, and no less meritorious in itself than those. Indeed, of very numerous cases referred to and examined in the investigation of this subject, the defense in the one at bar has no superiority, certainly, on the score of merit.

Without expressing any opinion upon, or criticising the evidence, we are of the opinion that the circuit court erred in refusing to submit to the jury the instructions asked by the plaintiff on the trial. We, therefore, reverse the judgment of the court below, and remand this case for another trial.