## GARY, HUDSON & CO. v. G. JACOBSON.

SALES.  *Statute of frauds.  Who can object to fraud in sales.*

A defendant cannot resist payment of a demand for the price of goods sold and delivered to him, on the ground that the sale was in fraud of the creditors of the seller.  Under our statute of frauds only pre-existing creditors have the right to object to a sale for that reason.  As to them, such sale is voidable at their election; but as to all others, is valid and obligatory.

ERROR to the Circuit Court of Lauderdale County.

Hon. S. S. CALHOON, Judge, specially presiding, by exchange with Hon. J. S. Hamm.

Gary, Hudson & Co. brought an action against G. Jacobson on a check or draft given by him to one Carter, and by the latter transferred to the plaintiffs in error.  It was given in payment for goods sold and delivered by Carter to the defendant, and which were in the possession of the latter when the action was instituted, and so remained.  Upon the trial the court gave the following, amongst other instructions for the defendant:

"If the jury believe from the evidence that the sale of the goods was a fraud on Carter's creditors, and was so intended, and that Gary had reasons to believe, and did believe when he took the draft, that that was the nature of the transaction, then the law will not lend its aid to enforce the payment of the draft, and the jury will find for the defendant."

The jury did find for the defendant, and the plaintiffs bring the case to this court upon writ of error.

*W. H. Hardy*, for the plaintiffs in error.

As to the question raised by defendant's second instruction, that this sale was intended by Carter as a fraud upon his creditors, there is no proof of any such intention; but, if there was, the defendant, by his plea, shows that he was the instrument through whom this fraud was perpetrated; and he was getting a $4,000 stock of goods for $3,600, and collecting a debt of his own for near $1,300.  Yet the court practically charged the jury that the defendant could plead such fraud,

could take advantage of his own wrong, and thus commit a double fraud upon the plaintiffs.

No counsel for defendant in error.

CHALMERS, J., delivered the opinion of the court.

The instrument sued on was executed in part payment of a stock of goods sold by one Carter to the defendant, Jacobson. It was by Carter transferred to plaintiffs. Some proof having been made tending to show that the sale by Carter to Jacobson was made with the connivance of Jacobson, with intent to hinder, delay, and defraud the creditors of Carter, and that plaintiffs knew, or had cause to suspect, this at and before the time when they received the paper, the court below instructed the jury that if they believed that the sale was made with such intent, and that plaintiffs knew, or had reason to believe, it before the paper was assigned to them, no recovery could be had upon it. Is this a correct enunciation of the law? Can the purchaser of property which has been sold to defeat the creditors of the seller resist payment of the price, on the ground of the illegality of the transaction, where he is in the undisturbed possession of the property sold? The question is of first impression here, but has been much discussed elsewhere. It is answered in the affirmative by the courts of last resort in New York, Kentucky, Alabama, South Carolina, North Carolina, and New Jersey, and this view is adopted in Bump on Fraudulent Conveyances. *Nellis* v. *Clarke*, 4 Hill, 424; *s. c.*, 20 Wend. 24; *Norris* v. *Norris*, 9 Dana, 317; *Walton* v. *Bonham*, 24 Ala. 513; *Hurvin* v. *Weeks*, 11 Rich. 601; *Powell* v. *Inman*, 8 Jones, 436; *Church* v. *Muir*, 33 N. J. 318.

It is admitted by these authorities that the statutes of 13th and 27th Elizabeth, as well as the American statutes of frauds and perjuries, declare conveyances in fraud of creditors void only as against creditors of the grantor, but they contend that the implied validity of them, thus recognized, or rather not negatived, as between the parties, applies only to executed,

and not to executory, contracts. They insist that behind these statutes stands the common law, which ever placed the stamp of illegality and invalidity upon such dealings. They assert that by the common law such contracts were void as to every-body, and that the only effect of the statutes was to declare that, as to executed conveyances, they should be good between the parties, leaving them void so far as they were executory, both as to creditors and as to the parties themselves. Hence, whether the parties to such conveyances call upon them to render an executed, or to enforce an executory, contract, these courts apply alike to either demand the maxims *ex turpi causa nulla actio oritur*, and *in pari delicto potior est conditio defen-dentis*. They permit either party to set up the fraud, and when it has been established, they deny to either any relief.

We are unable to concur in this view. It is by no means certain that, by the common law, conveyances in fraud of cred-itors were held void between the parties, and that it was only by virtue of the statutes that their invalidity was limited to the creditors of the grantor.

Though it seems to have been so regarded in *Twynes' Case*, and in *Upton* v. *Bassett*, Cro. Eliz., 445, it was denied by Lord Mansfield (Cowp. 434), by Chief Justice Marshall (1 Cranch, 316), and by Chancellor Kent (9 Johns. 339). These eminent jurists were of opinion that the English statutes of frauds were simply declaratory of the common law. Dating back, as the earliest of these statutes do, to 3 Henry VII. and 50 Edward III., before which periods there are few reported cases, the point is necessarily involved in much obscurity. It is not perceived how a settlement of it is material to the ques-tion at issue. Whatever view the common law may have taken of covinous conveyances, the statute law of England for more than 300 years, and of America since the origin of our jurisprudence, has declared that they shall be deemed void only against those whom they are calculated to injure, to wit, the creditors of the grantor.

That this applies both to executed and executory contracts

seems apparent from the language of the statutes.   Not only
are " gifts, grants, and conveyances of lands, or of goods and
chattels," which are executed contracts, embraced both by the
English and American statutes, but also " bonds, suits, judg-
ments, and executions," which are things executory in their
nature.   Code 1871, sec. 2893.   As to all of these, it is de-
clared that, when entered into for the purpose of defrauding
creditors, they shall be void " *only* as against the person or
persons, his, her, or their heirs, successors, administrators, or
assigns, and every of them, whose debts, suits, demands, es-
tates, or interests, by such guileful and covinous devices and
practices aforesaid, shall or might be in anywise disturbed,
hindered, delayed, or defrauded."

What sound principle demands that the fraudulent vendee
shall be allowed to remain in possession of the property con-
veyed, and refuse to pay the price agreed on?   The transac-
tion is harmful only to the creditors of the vendor.   If they
do not complain — if they acquiesce — why should he be per-
mitted to escape payment of his ill-gotten gains?   There is a
manifest distinction between conveyances in fraud of creditors,
and offenses against the penal law.   By one the body politic,
the sovereign commonwealth, is wronged; by the other, those
only who have an interest in undoing the fraud, and this num-
ber is limited in our state to pre-existing creditors.   As to
them the transaction is void, or rather, voidable at their elec-
tion.   As to all others it is valid and obligatory.

Even where parties have been mutually engaged in dealings
clearly illegal and prohibited by law, but which have ceased,
it has been twice held in this court, after full argument and
careful review of the authorities, that the one who had reaped
the profits might be compelled to a settlement by his co-par-
ticipant.   *Gilliam* v. *Brown*, 43 Miss. 641; *Walker* v. *Jeffress*,
45 Miss. 160.

The views announced above are sustained in well-considered
opinions by the courts of Maine, Vermont, Massachusetts,
Pennsylvania, Missouri, and Indiana.   The reasoning of these

decisions seems to us conclusive, both upon principle and prec-edent. *Dyer* v. *Homer*, 22 Pick. 253 ; *Carpenter* v. *McClure*, 39 Vt. 9 ; *Telford* v. *Adams*, 6 Watts, 429 ; *Harvey* v. *Varner*, 98 Mass. 118 ; *Nichols* v. *Patten*, 18 Me. 231 ; *Moore* v. *Thompson*, 6 Mo. 353 ; *Findley* v. *Cooley*, 1 Blackf. 262 ; *Springer* v. *Drosh*, 32 Ind. 486.

The fifth instruction given for defendant in the court below was not in accordance with these views, and was, hence, erroneous. Upon the facts in controversy the testimony was so conflicting, and apparently so equally balanced, that the erroneous charge must produce a reversal.