Baldwin *v.* Marsh.

No. 716.

## BALDWIN *v.* MARSH.

APPEAL.—*Appellate Court Practice.*—*Bill of Exceptions.*—*Statement as to Filing Presumed to be Part of Record.*—A statement in a transcript of the record concerning the filing of a bill of exceptions will be presumed to be a part of the record of the cause, unless the contrary is made to appear.

FRAUD.—*Action for Money Obtained Through False Representations.*—*Fictitious Issue of Stock.*—*Conditions Precedent to Recovery of Money Paid for.*—In an action for money obtained under false representations, by inducing plaintiff to purchase stock of a company which had no existence in fact, and of which defendant was not an officer as he represented himself to be, the plaintiff can not recover, in the absence of a return or surrender of the stock issued to him, unless he shows that the stock was worthless.

EVIDENCE.—*False Representations.*—*Action for Money Obtained Through.*—*When Denial of Intent to Deceive is Immaterial.*—In an action for money obtained through false representations, when the charge is that representations were falsely made, with knowledge of their falsity, and the fact so represented is such an one as is absolutely within the knowledge of the one making the representation, his denial of an intent to deceive would be wholly immaterial.

VERDICT.—*Not Sustained by Evidence.*—That the evidence is insufficient to sustain the verdict, see opinion.

From the Grant Circuit Court.

*G. W. Harvey* and *A. De Wolf*, for appellant.

*H. Brownlee* and *H. J. Paulus*, for appellee.

GAVIN, J.—It is claimed by appellee that the bill of exceptions is not properly in the record, because it is not shown to have been filed.

On page 18 of the transcript appears the following:

"And afterwards, to wit, on the 13th day of July, 1892, the following bill of exceptions was filed with the clerk of the Grant Circuit Court, which is hereto attached, and is in the words and figures following, to wit:" and thereupon is set out what purports to be the bill of exceptions signed by the judge.

At the close of the transcript, and following the bill of exceptions, the clerk certifies the "Foregoing to be a full, true, correct, and complete transcript of the record of the proceedings and judgment of said court in the above entitled cause."

Counsel for appellee insist that the statement concerning the filing of the bill is "the mere recital of the fact, which may or may not be shown by any record in the office of the clerk."

We think that the fair construction of the certificate is that the entry copied above is a part of the record of the proceedings in this cause, and that the filing of the bill of exceptions is, therefore, shown, according to even the strictest interpretation of the rule. It is not subject to the objection made in the cases of *Guirl* v. *Gillett*, 124 Ind. 501; *Loy* v. *Loy*, 90 Ind. 404; *Board, etc.*, v. *Huffman, Admr.*, 134 Ind. 1, 31 N. E. Rep. 570.

This case is far within the rule as laid down in *Armstrong* v. *Harshman*, 93 Ind. 216; *Hull* v. *Louth, Guar.*, 109 Ind. 315.

If the statement as to the filing was not in fact taken from the record below, that fact could have been easily made to appear by *certiorari*. In the absence of such a showing, the statement above set out must be deemed properly in the record.

The complaint in this action alleges that defendant, for the purpose of cheating and defrauding plaintiff, and inducing him to part with his money, represented to him that the Marion Natural Gas Company was a duly organized corporation, of which defendant was an officer, and that the corporation was solvent, was the owner of three miles of pipe worth $3,000, and a gas well worth $5,000; that, relying upon these representations, plaintiff paid defendant $200, for which he pretended to issue to him stock of said company; that the representations were false in this, that there was no such corporation; that defendant

was not an officer thereof; that the corporation had no property whatever, and that stock therein was, and is, wholly worthless, all of which was at the time well known to the defendant; that the plaintiff, relying upon said representation, paid the defendant $200, which he appropriated to his own use, and has refused to return to plaintiff, though requested so to do, and that there is now due the plaintiff from the defendant $200 and 6 per cent. interest since March 2d, 1888, and that the same is unpaid.

The complaint is plainly one to compel the return of the $200 with which the plaintiff had been thus wrongfully induced to part, and which the defendant had obtained by means of a sham and fictitious issue of pretended stock, and had then appropriated to his own use.   The complaint is not to recover damages for having been induced to buy something which plaintiff really obtained, but which was not as valuable as it would otherwise have been.

There was an answer of general denial, a trial, a verdict, and a judgment for plaintiff for $150, the full amount paid by him to defendant.

The sufficiency of the evidence to sustain the verdict is properly presented for our consideration.

The evidence establishes, without controversy, that in February and March, 1888, defendant had put down a gas well on a farm, near Marion, owned by himself and wife; that the Marion Natural Gas Company was duly organized; that defendant was an officer and director of the company; that the gas well was never actually owned by the company; that in February, 1888, and again on March 21st, 1888, defendant solicited plaintiff, who owned some twenty tenant houses to which he desired gas piped, to subscribe for stock, and obtained two subscriptions of $75 each, for which plaintiff paid him $150, and received proper certificates of stock for that amount.

Plaintiff testified that to procure these subscriptions, defendant represented to him that "he had the gas well in

the company," and that he believed and relied upon this statement. This is, according to plaintiff's own evidence, the only false representation made to him. Defendant claimed that he simply told plaintiff that the company was to have the gas well when it paid for it, and that it never, in fact, paid for it; but, in the consideration of the evidence upon this point, we give to it the most favorable construction which could be claimed in plaintiff's behalf, and without deciding, assume that the subscription was procured by the false representation that the company owned the gas well. In addition to this, however, before appellee can maintain his recovery for the return of his money, without a return or surrender of the stock issued to him, he must have shown that the stock was worthless, as alleged in his complaint. *Fleetwood* v. *Dorsey Machine Co.*, 95 Ind. 491; *Higham* v. *Harris*, 108 Ind. 246; *Regensburg* v. *Notestine*, 2 Ind. App. 97.

This the appellee wholly failed to do. It is not here a question of the weight of the conflicting evidence, but it is a case where there is absolutely no evidence to justify the finding of such a fact.

The uncontroverted evidence is that in March, 1888, the company had about $7,000 worth of mains; that, while there were then debts outstanding for a large portion of this amount, in April, 1888, defendant and another director took stock for an amount sufficient to pay the principal obligations of the company, and on that day sold the gas well and their $7,000 of stock to another gas company, receiving for the stock about its par value.

While it was proved that the purchasing company has been using these mains from that time forth, and supplying gas through them to consumers, it is uncontradicted that the Marion Natural Gas Company still owns them. Not a single witness testified that the stock was worthless, or that it was worth less than its face. Not a dollar of indebtedness of the Marion company is shown to exist.

In this condition of the evidence, the jury could not rightfully have found in favor of appellee the essential fact that this stock was worthless, and without this proof appellee can not retain the stock and recover his money.

Whether an action for damages might be maintained by appellee, we are not called upon to determine, for the reason that we are clearly of the opinion that this complaint can not be so construed.

Counsel for the appellant also urge that there was error in the court's refusal to permit him to testify that he did not, in his conversations with appellee, "intend to deceive or defraud him."

To sustain this proposition, they cite: *Parrish* v. *Thurston*, 87 Ind. 437; *Over* v. *Schiffling*, 102 Ind. 191; *Sedgwick, Admr.*, v. *Tucker*, 90 Ind. 271.

These cases do not sustain appellant's proposition. There can be no doubt as to the correctness of the rule established by these cases, that where the intent with which an act is done becomes material, it is proper to ask what that intent was; but where the charge is that representations were falsely made, with knowledge of their falsity, and the fact so represented is such an one as is absolutely within the knowledge of the one making the representation, his denial of any intent to deceive would be wholly immaterial. Bigelow on Fraud, 180; *Cowley* v. *Smyth*, 46 N. J. Law, 380 (p. 388); *Hine* v. *Campion*, Law Rep., 7 Ch. Div. 344.

In this case the appellant denied making the representation as charged, and insisted in his evidence that he told the appellee the exact truth. His statement to the jury that he did not thereby intend to deceive or defraud appelle, could not, in any degree, strengthen his evidence.

The judgment is reversed, at the costs of the appellee, with instructions to sustain the motion for new trial.

Filed April 15, 1893.