PRASUHN ET AL. *v.* ALFKE ET AL.

[No. 15,565. Filed January 3, 1938. Rehearing denied March 29, 1938.]

*Richard L. Ewbank, Carl Humble* and *Wilbur F. Pell,* for appellants.

*R. E. George, Means & Buenting* and *David Smith,* for appellees.

DUDINE, P. J.—This cause was instituted by appellants against appellees.

It proceeded upon a second amended second paragraph of complaint in which appellants alleged that they entered into a written contract with appellees to purchase certain real estate from appellees, that appellees fraudulently and falsely represented said real estate as being worth more than $4,800.00 but that it was not worth more than $2,200.00, which fact appellees well knew, that appellants were induced to enter said agreement by said false representations of appellees, that they paid appellees $2,726.50 pursuant to the terms of said contract, which amount is more than the actual value of the real estate.

The complaint prayed that appellants' title be quieted and "that in the event it should be found that plaintiffs are mistaken as to the value of said described real estate—that said value of said real estate, at the time of defendants making said representations of value and said contract was executed, be determined—and if plaintiffs have not fully paid for said described real estate at its full actual value that they be given the opportunity to pay any difference remaining unpaid and for all other proper relief."

Appellees answered that complaint in two paragraphs, one a general denial and the second pleading the statute of limitations.

Appellees also filed a cross-complaint in two paragraphs, each of which prayed possession of said premises and damages for detention thereof. The first paragraph in effect simply alleged unlawful detention by appellants without reference to said contract, and the second paragraph of cross-complaint alleged that appellants obtained possession pursuant to the terms of said contract but they having failed to comply with the terms thereof, appellees were entitled to possession of the premises.

Appellants filed an answer in general denial to the cross-complaint.

Appellants having filed a reply in general denial to said second paragraph of answer, and a jury having been impanelled, the cause was submitted for trial on the issues presented by said complaint. At the close of plaintiffs' evidence appellees (defendants below) filed a motion for a directed verdict for defendants on the issues presented by the complaint, which motion the court sustained, and the court instructed the jury in writing to render a verdict for the defendants on the issues presented by the complaint.

Thereafter by leave of court appellants filed a coun-

terclaim in two paragraphs to the cross-complaint of appellees. The first paragraph of said counterclaim alleged substantially the same facts which were alleged in the complaint, and prayed judgment against appellees in the sum of $2,600.00 (the difference between the alleged agreed price and the alleged actual value of the real estate). The second paragraph of said counterclaim alleged similar facts, and prayed a quiet of title to the real estate and judgment of $200.00.

Appellees filed an answer in two paragraphs to the counterclaim, one a general denial and the other pleading the statute of limitations. Appellees also filed an answer in general denial to the second paragraph of counterclaim.

The cause was thereupon submitted for trial on the issues presented by said cross-complaint and counterclaim. Additional evidence was heard, and at the conclusion of the evidence appellees filed separate motions for a directed verdict for defendants on each the first and second paragraphs of appellants' counterclaim and on each the first and second paragraphs of appellees' cross-complaint, all of which motions were sustained, and the court instructed the jury in writing in accordance with its actions on said motions and the jury returned the following verdict: "We, the jury, find for the cross-complainants, on the issues joined on the cross-complaint of said Dietrich Alfke and Marie Alfke; that the cross-defendants Wilhelm Prasuhn and Anna Prasuhn are guilty of unlawfully withholding the real estate described in cross-complaint, from said cross-complainants, and that said cross-complainants are entitled to the possession of the same; and we further find for said cross-complainants Dietrich Alfke and Marie Alfke on the issues joined on each paragraph of the counterclaim of cross-defendants Wilhelm Prasuhn and Anna Prasuhn."

Judgment was rendered in accordance with the verdict. Appellants duly filed a motion for new trial, which was overruled, and said action of the court is the sole error assigned and relied upon for reversal.

The causes for new trial presented for review are: (1) The court erred in giving to the jury instruction number one which directed the jury to return a verdict for appellees upon appellants' complaint; (2) the verdict of the jury as to the issues joined upon the complaint is contrary to law; (3) the court erred in giving to the jury instruction number two which directed the jury to find for appellees on each paragraph of appellees' cross-complaint, and on each paragraph of appellants' counterclaim; (4) the verdict of the jury as to the issues formed upon appellants' "counterclaim" is contrary to law; (5) the verdict of the jury as to the issues joined upon appellees' cross-complaint is contrary to law.

Appellants contend that there was some evidence introduced showing that they were induced to agree to pay $4,800.00 for the property by fraudulent representations of appellees as to the value of the real estate, that therefore the court committed reversible error in giving said instruction number one to the jury, and thus refusing to submit to the jury the question of fraud.

Appellees' counsel stated in oral argument that for the purpose of determining that contention it may be assumed that the evidence shows that appellee did make said representations as to the value of the real estate and did thus fraudulently induce appellants to agree to pay $4,800.00 for real estate which was worth not more than $2,200.00; that even if those facts be assumed the court's action on the motion for directed verdict as to the issues presented by the complaint, was proper.

Appellees contend "that appellants' complaint is so

drawn that it can be interpreted as proceeding on two theories, the first of which is that where a purchaser has been induced by fraud to enter into a contract of sale, he has the right to pay the value of the property purchased, that is, insist upon performance in so far as obtaining title, but at the same time, rescind that part of the contract with reference to the purchase price. The second possible theory is that such a purchaser has the right to recover his damages by reason of such fraud and have them applied to the payments of the unpaid purchase price."

Appellees contend further that the cause was tried on said first mentioned theory, that said theory is not tenable in law, and that said second theory is not tenable in law.

The complaint covers forty-two pages of the transcript. It is not necessary or advisable that we incorporate it in this opinion. Our discussion of the complaint above set out is sufficient for a consideration of the theory of the complaint.

Appellants contend that "the complaint is upon the ground that the appellants contracted to buy and the appellees contracted to sell described real estate; that appellees, in securing appellants' agreement as to the price, were guilty of fraud, and that the price named in the contract was the child of the fraud; that appellants believe they have paid the full value of the real estate, and surely sufficient to keep their rights alive, and if they have not fully paid, they are willing to pay the balance as the court may find it to be. In short that they demand that the price be abated to the amount that it was increased in the contract by reason of the appellees' fraud."

We think appellees' first construction and appellants' construction of the complaint above set out are sub-

stantially similar, and each of said constructions is a fair construction of the complaint. The theory contended for in each of said constructions seeks, in effect, to enable the purchaser of the property to enforce the contract insofar as the conveyance of the real estate is concerned but to ignore the contract insofar as the agreed purchase price is concerned.

We will now proceed to determine whether that can be done, that is, whether appellants could enforce or affirm the contract in part and ignore or rescind it in part.

In *Rinker* v. *Sharp* (1839), 5 Blkf. 185, the parties had entered into a contract whereby Sharp agreed to convey to Rinker certain real estate at the estimated value of $1,800.00 and Rinker agreed to convey to Sharp certain real estate of the estimated value of $800.00 and give Sharp $1,000.00. After the conveyances were made and the $1,000.00 was paid Sharp contended that Rinker had fraudulently misrepresented the value of the land so conveyed to Sharp, and that he (Sharp) had been induced by such fraudulent misrepresentations to accept said land as of the value of $800.00. Sharp tendered a return of the deed and demanded $800.00 from Rinker, but Rinker refused. Sharp sued Rinker for the price of said land, and the trial court rendered judgment for Sharp in the sum of $600.00.

On appeal, Sharp contended in support of the judgment (p. 186), ". . . that in consequence of the untrue representations of the other party as to the . . . quality of the land received . . . in exchange, he had a right to rescind that part of the contract under which he so received the land and recover its estimated value in money . . ."

With reference to that contention the court said (p. 187):

"We cannot sanction this view of the case. It is true there may be such fraud practiced by a vendor in the sale of land, as to entitle the vendee to rescind the whole contract. *But we are not acquainted with any principle of law which authorizes one of the parties to a contract to insist upon the benefit of that part of it which pleases him, and to rescind another portion of it which he considers disadvantageous.* Such authority would be the power to alter, not to abrogate a contract. . . ." (Our italics.)

*Rinker* v. *Sharp, supra,* is cited by our Supreme Court in *Johnson* v. *Houghton* (1862), 19 Ind. 359, in support of the following statement (p. 364) :

"A contract can not, for either mistake or fraud, be rescinded in part and affirmed in part. It must be rescinded *in toto,* or not at all."

In *Johnson and Others* v. *Cookerly* (1870), 33 Ind. 151, where the facts were similar to the facts in *Rinker* v. *Sharp, supra,* the court quotes with approval that part of the excerpt taken from that case, above set forth which we have italicized and the court says further, with reference to the case before it (p. 155) : "He (plaintiff) claims thus a benefit from the very contract' a part of which he seeks to rescind. We think that no case can be found in the books which will sustain him in this."

In *Regensburg* v. *Notestine* (1891), 2 Ind. App. 97, 27 N. E. 108, appellant as endorsee of a note executed by appellee, brought suit thereon against appellee; appellee filed an answer in which he alleged the note was given in purchase of twenty bushels of oats which the seller (and payee of the note) had fraudulently represented to be worth $10.00 per bushel, that appellee was induced by such false representations to execute the note, that the oats were in fact worth only $2.00 per bushel, which the seller well knew. Appellee offered, in the answer, to confess judgment for the value of the

oats. The trial court overruled a demurrer to the answer. On appeal, this court ordered the demurrer sustained.

With reference to said answer, this court said (p. 99) :

> "Conceding that the note was procured by fraud, the appellee can not rely upon the fraud to defeat the note, and at the same time retain the benefits derived from it. *Heaton* v. *Knowlton*, 53 Ind. 357; *Higham* v. *Harris*, 108 Ind. 246; *Cates* v. *Bates*, 78 Ind. 285; *Lafayette, etc., Works* v. *Phillips*, 47 Ind. 259.
>
> "A contract or other transaction, induced or tainted by fraud, is not void, but only voidable, at the election of the party defrauded.
>
> "If he wants to avoid the contract itself entirely, as a contract or cause of action, he must, when he discovers the fraud, rescind the contract by returning, or offering to return, the thing purchased, if it have any value. If he does not do this he affirms the contract. He cannot treat it as good in part and void in part; he must affirm or avoid it as a whole. *Worley* v. *Moore*, 97 Ind. 15; *Himes* v. *Langley*, 85 Ind. 77; *Ashmead* v. *Hurt*, 125 Ind. 566." (See also *Baldwin* v. *March* (1892), 6 Ind. App. 533, 33 N. E. 973; *Chi., etc., R. Co.* v. *Southern, etc., R. Co.* (1906), 38 Ind. App. 234, 70 N. E. 843.)

Appellants, in their reply brief, contend that *Higham* v. *Harris* (1887), 108 Ind. 246, 8 N. E. 255, and *Cates* v. *Bates* (1881), 78 Ind. 285, which are cited in *Regensburg* v. *Notestine, supra,* in support of said rule of law are "against" said rule. We have read said authorities, and we think they support said rule.

Appellants cite several authorities in support of a proposition stated as follows: "Where a seller : . . . induces the buyer by fraud to agree to pay a specified amount for real estate upon fraudulent representations of its contents or value, . . . the buyer has the right to title by paying its actual value and right to refuse to pay that part of the purchase price which is based upon

the seller's fraud." Said authorities may be properly divided into two classes, to wit: 1. Cases in which there was a defect in the title of the property sold (see *Traster* v. *Snelson's Admr.* [1867], 29 Ind. 96), or a deficiency in the area or amount of the property sold, e. g., where seller represented a certain tract as comprising one hundred acres and sold it on that basis, but in fact it did not contain that much land. See *Cox* v. *Reynolds* (1855), 7 Ind. 257; *Tyler* v. *Anderson* (1885), 106 Ind. 185, 6 N. E. 600. 2. Cases in which such' fraud of the seller was set up as a defense to an action by the seller for performance of the sales contract by the buyer. See *Norris* v. *Tharp* (1878), 65 Ind. 47; *Reed* v. *The Tioga Mfg. Co.* (1879), 66 Ind. 21; *Scheible* v. *Slagle* (1883), 89 Ind. 323; *English* v. *Arbuckle* (1890), 125 Ind. 77, 25 N. E. 142; *Boltz* v. *O'Connor* (1910), 45 Ind. App. 178, 90 N. E. 496.

The reasons for permitting the buyer, in cases belonging in said classes, to retain the property although they have paid an amount less than the agreed price for the property and refuse to pay the balance do not apply to the instant case.

The basic reason for permitting the buyer to do that in the first class of cases is the fact that in such cases the seller *has not fully performed his contract, or is not able to fully perform his contract.* Where there is a defect in the title the buyer may retain such title as he acquired from the buyer and ask abatement of the purchase price for the amount of damages he has suffered by reason of the seller's failure to convey or inability to convey such title as he agreed to convey. Where there is a deficiency in amount of goods sold, e. g., deficiency in acreage in sales of land on an acreage basis, the purchaser may retain the land which was conveyed and ask abatement of the purchase price for the value of the land which the seller represented would be con-

veyed, but which was not conveyed to him, or which the seller can not convey.

*Following the rule contended for by appellants in such cases does not effect alterations of the contracts agreed upon,* but merely permits the buyer to accept partial performance by the seller and to recover an abatement of the purchase price on account of sellers' partial *non-*performance or inability to fully perform the contract.

Application of said rule in the instant case would not merely permit an acceptance by appellants of partial performance by appellees and an abatement of the purchase price, but *would effect an alteration of the contract,* it would force appellees to accept less than the agreed price for the real estate. Fraud is a proper basis for rescission of a contract, but is not a proper basis for *alteration* of a contract. See *Rinker* v. *Sharp, supra; Ryan* v. *Evans* (1924), 195 Ind. 570, 580, 145 N. E. 6.

We may assume that appellees, the sellers in the instant case, were able to fully perform the contract, i. e., to convey good title to the real estate in question, and that they will do so when all payments therefor are made, and all conditions precedent to such conveyance are performed, all as provided in the contract.

It is admitted that where a purchaser is induced by fraudulent representations of the seller as to the property sold, the purchaser has an election of remedies; the purchaser may rescind or he may affirm the contract. The purchaser can not, however, affirm that part of the contract which pleases him and rescind that part which he considers disadvantageous. *Rinker* v. *Sharp, supra; Regensburg* v. *Notestine, supra.* Appellants were seeking to do that in the instant case.

In cases of the second class above referred to, where such fraud of the seller is set up *as a defence* to an action by such seller for performance of the contract, the buyer does not thereby affirm the contract in part and rescind it in part, he thereby affirms the contract *as a whole* and asks abatement of the purchase price, for partial *non*-performance by the seller. For reasons which are apparent from what we have said above, cases in the second class are not in point here.

We have found no cases, except cases involving defects in title, and deficiencies in area or quantity of the thing sold, which support the rule of law that where a purchaser was induced by fraud of the seller to purchase property, but has failed to pay all the purchase price, the purchaser can obtain an abatement of the purchase price on account of such fraud and in the same action obtain specific performance of the contract by the seller. In 58 C. J. 901, Sec. 56, we found this statement made in reference to such rule of law: "The rule is not to be extended to cover defects other than deficiencies in title or area of the land to be conveyed." See to same effect 40 Harvard Law Rev. 476, 478. We do not consider that rule of law applicable to the instant case.

The complaint seeking a remedy which is not sanctioned by the law of this state, to wit, *alteration* of a contract because of fraud in its execution, the court's instruction to the jury that they return a verdict for the appellees as to the issues joined on the complaint was proper, and the verdict of the jury as to said issues was not contrary to law.

In support of the assigned error in instructing the jury to find for the appellees on their cross-complaint and on appellants' counterclaim, and in support of the assigned errors that the verdict of the jury as to the issues joined upon the cross-com-

plaint and counterclaim are each contrary to law, appellants contend this was a suit to quiet title, and therefore the six-year statute of limitations applicable to actions for relief from fraud was *not* applicable in the instant case.

In determining the theory of a complaint the pleading must be considered as a whole. The prayer of a complaint does not of itself fix its theory. We have considered the complaint as a whole and although the prayer asked that the title be quieted in appellants, as we have previously indicated, we hold that it is a complaint for specific performance of *part* of a sale contract and abatement of purchase price on account of alleged fraud of the seller which induced the buyer to enter the contract. The record shows that the issues presented by the complaint were tried on that theory.

The record does not show that the six-year statute was the basis for the court's action in giving said instruction, or the basis for the verdict of the jury as to said issues. Therefore appellants' said points which are based on the assumption that the six-year statute of limitations was applied in this case, are unavailing.

Each of the paragraphs of counterclaim, like the complaint, seek, in effect, to affirm the contract in part and rescind it in part. We repeat, law does not sanction such a remedy. Furthermore the issues presented by the counterclaim were in legal effect the issues presented by the complaint. We hold, therefore, that the court's action in directing a verdict for appellees on the issues presented by the counterclaim was proper and that the verdict on said issues was not contrary to law.

No reversible error having been shown, the judgment is affirmed.