In the Matter of **PEOPLES MARKETING CORPORATION**, Bankrupt, Genesco, Inc., Petitioner-Appellant,

v.

**Marvin L. HACKMAN**, Trustee, Respondent-Appellee.

No. 14843.

United States Court of Appeals
Seventh Circuit.

June 1, 1965.

Rehearing Denied July 16, 1965.

Sigmund J. Beck, John Wood, Indianapolis, Ind., for petitioner-appellant.

Patrick J. Smith, Peter Nicholas, Marvin L. Hackman, Jack I. Kahn, Indianapolis, Ind., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This appeal arises from a bankruptcy proceeding following the filing of an involuntary petition in bankruptcy against Peoples Marketing Corporation. Marvin L. Hackman was appointed receiver and subsequently was elected trustee in bankruptcy. Specifically, the appeal concerns (1) a reclamation petition filed by petitioner Genesco, Inc., which sells and distributes shoes and has its principal office in Nashville, Tennessee, and (2) the trustee's petition to avoid a preferential transfer of the bankrupt's property to Genesco.

Peoples Marketing Corporation was organized in January, 1962 by a group of businessmen as a retail merchandising enterprise at Alexandria, Indiana. On February 26, 1962, Genesco received a letter from Peoples ordering about $15,000 worth of shoes from the W. L. Douglas and Bellwood Divisions of Genesco. Negotiations by letter and telephone followed. Although Genesco ordinarily required a fifty per cent cash payment before shipment, it agreed to waive this provision for the shipment to Peoples. Genesco had already secured a corporate financial statement from Peoples and personal guaranties from two of Peoples' corporate officers. Upon accepting a cash payment of $200 and a post-dated check for $800, Genesco made its first shipment of shoes to Peoples on April 3, 1962, and continued making shipments until May 28, 1962. The shipments were made on open account. Subsequent to its last shipment, Genesco received an additional payment of $200 from Peoples. The $800 post-dated check failed to clear the bank.

In the first week of June, 1962, T. D. Oxford, general credit manager and assistant treasurer of Genesco, went to Alexandria to investigate Peoples. He requested and received a second corporate financial statement from Peoples, this one differing in certain respects from the earlier one. After discussing the situation with James A. Braun, then president of Peoples and one of the men who had made a personal guarantee, Oxford agreed to accept a return of some of the merchandise sent to Peoples. On June 8 and 9, 1962, approximately 2,500 pairs of shores, valued at $7,049.25, were removed in trucks from Peoples' store and taken to the home of one of its employees. Subsequently, they were returned to Genesco for credit.

Less than one month later, on July 5, 1962, the involuntary petition in bankruptcy was filed against Peoples. Genesco filed a reclamation petition against the trustee in bankruptcy and sought thereby to recover the $7,903.45 worth of shoes still unpaid for and unreturned by Peoples. The trustee countered by petitioning to avoid a preferential transfer, claiming that the return of the shoes to Genesco in early June constituted such a preference. The referee found against Genesco on its petition to reclaim property and in favor of the trustee on his petition to avoid a preferential transfer. Upon review, the district court adopted the referee's findings and conclusions, denying the reclamation petition and granting the petition to avoid preferential transfer. This appeal followed.

In support of its reclamation petition and in defense of the trustee's petition to avoid a preferential transfer, Genesco contends that despite the referee's finding to the contrary, the financial statements furnished by the bankrupt to Genesco were fraudulent. As a victim of fraud, Genesco argues that it exercised its right to rescind the contract. The referee found that although the initial corporate financial statement over-valued certain real estate and omitted certain liabilities, there was, in fact, no fraud. He also found, however, that the personal financial statement of one of the officer-guarantors contained certain false

representations. Moreover, the referee found that Genesco relied on these financial statements in extending credit to the bankrupt. Although we are not persuaded that the ambiguous findings of the referee on this issue compel an ultimate finding of fraud as a matter of law, we shall assume as much, because there was no error in the referee's finding that Genesco did not rescind or attempt to rescind the sales. This being the fact, Genesco cannot prevail, regardless of a possible showing that it was misled by false representations.

■ Regardless of a showing of fraud, in order for Genesco to prevail it must demonstrate that its actions following the discovery of such fraud, assuming *arguendo* that there was fraud, constituted rescission of the contract. Lichter v. Goss, 232 F.2d 715 (7th Cir. 1956); Sickels v. Aetna Sec. Co., 220 Ind. 347, 41 N.E.2d 947 (1942).

■ The evidence, both negative and affirmative in nature, indicates that Genesco's conduct did not constitute a rescission or an attempt to rescind. We note first that Genesco did not demand the return of shoes to it nor did it return the $400 payment it had received. The partial return of the shoes resulted from an agreement between Oxford and Braun, not from a demand by Oxford. Moreover, Genesco failed to offer to return the $400 and thereby weakened its argument that it rescinded since an offer to return consideration is a condition precedent to the exercise of the right to rescind an agreement. In addition to failing to take measures which might have rescinded the agreement, Genesco took positive steps which indicated its willingness to affirm. After learning of Peoples' financial instability and receiving the partial return of merchandise, Genesco credited the open account of Peoples and continued to request payment of the balance owing.

■ This evidence, we hold, shows that Genesco took no steps to rescind the sale allegedly induced by fraud, but on the contrary actively affirmed the sale after gaining full knowledge of the facts. The referee's finding, sustained by the district court, that Genesco "did not at any time rescind or attempt to rescind the sale of merchandise" was not erroneous.

■ Such failure to rescind had two distinct legal results. First, it defeats the petition for reclamation since a right to reclaim was forfeited by an attempt by Genesco to realize on the sales contract itself. Secondly, the affirmance of the contract placed Genesco in the classification of general creditors of the bankrupt. Thus, the return of shoes to it within four months of Peoples' bankruptcy and at a time when Genesco had reasonable cause to believe that Peoples was insolvent constituted a preferential transfer voidable under section 60 of the Bankruptcy Act, 11 U.S.C. § 96. The other necessary elements for a voidable preference are contained in the referee's findings that the transfer was on an account of an antecedent debt and that it enabled Genesco to obtain a greater percentage of its debt than other creditors of the same class. These findings are not erroneous, but are sustained by the evidence.

■■ Genesco's argument that it gave present consideration for the return of the merchandise by relinquishing *pro tanto* its right to rescind and recover the shoes which were returned is untenable. There is no evidence that there was such an agreement. Moreover, under Indiana law a right to rescind must be exercised or waived *in toto*; it cannot be relinquished *pro tanto*. Prasuhn v. Alfke, 105 Ind.App. 300, 11 N.E.2d 1000 (1938).

The order of the district court denying the reclamation petition and granting the petition to avoid preferential transfer is affirmed.