## STATE *vs.* WILLIAM C. MONTGOMERY, Appellant.

### Franklin.   Opinion May 28, 1900.

*Hawkers and Peddlers.   Constitutional Law.   Stat. 1889, c. 298: 1893, c. 282, c. 306; 14th Amend. U. S. Const.*

Section 1 of chapter 298 of the statute of 1889, as amended by chapter 282 and chapter 306 of the statute of 1893, relating to hawkers and peddlers, phohibits the peddling of certain classes of goods and chattels therein named, until the peddler shall have procured a license to do so.   Section 2 of the same chapter provides that "the secretary of state shall grant a license" for peddling "to any citizen of the United States who files in his office a certificate signed by the mayor of a city, or by the majority of the selectmen of a town, stating to their best knowledge and belief that the applicant therein named is of good moral character; but such license shall be granted to no other person."   It follows, therefore, that a citizen may obtain such a license, but that an alien cannot.

The court is of opinion that this statutory provision, which thus discriminates between citizens and aliens, is obnoxious to the Fourteenth Amendment of the Constitution of the United States, by which it is declared that no state shall "deny to any person within its jurisdiction the equal protection of the laws," and is therefore unconstitutional and void.

This statutory provision absolutely denies to an alien the privilege of an occupation open to citizens.   It does not permit the alien within our jurisdiction to pursue a business occupation, and to acquire and enjoy property on equal terms with the citizen.

*Held, also;* that although the discrimination is not injurious to the respondent, still the Hawkers & Peddlers Act must be regarded as invalid in toto.   The constitutional part cannot be separated from the unconstitutional part.   The distinction between citizens and aliens is fundamental in the scheme for licensing.   The statute being invalid as to aliens, if it were held nevertheless valid, as to citizens, it works a discrimination against citizens and in favor of aliens,—a result which the legislature plainly did not intend and which would likewise be unconstitutional.

*State* v. *Montgomery*, 92 Maine, 433, re-examined, and all points decided therein re-affirmed.

ON EXCEPTIONS BY DEFENDANT.

This was a complaint before the Municipal court of Farmington, for a violation of the statute of 1889, c. 298, as amended by laws of 1893, c. 282 and c. 306.

The case was originally tried before that court and has been once before this court in the form of a report upon facts agreed. The case was argued at the July term, 1898, and is reported in 92 Maine, p. 433. In accordance with the decree there, the "case was to stand for trial," and was again tried at the February, 1899, term of this court in Franklin county. The jury returned a verdict of guilty.

At the close of the evidence, and before the presiding justice charged the jury, counsel for respondent requested that the following instructions on matters of law, numbered from one to fourteen be given by the presiding justice to the jury. The presiding justice refused to give any of said requested rulings and instructions, but did instruct the jury among other things, as follows, to wit, "that the defendant was amenable to the statute of this state, the act of 1889, c. 298, relating to hawkers and peddlers; that he was not protected or justified by any law of this state or by the Constitution of the state, or by the Constitution of the United States, or by any act of Congress, in performing these acts without a license granted to him under the provisions of our own statute."

The defendant duly took exceptions to the rulings and instructions, and refusal to instruct, of the presiding justice.

Requested instructions:

1st. That the public laws of the state of Maine, of the year 1889, c. 298, p. 263, as amended by the public laws of the state of Maine of the year 1893, c. 282, p. 336, and c. 306, p. 372, relating to licenses of hawkers and peddlers and which said laws read as follows: [Here follow the statutes recited in full] are repugnant to the constitution, treaties or laws of the United States, and especially that said public laws of Maine are repugnant to the fol-

lowing part of the Constitution of the United States, namely: Art. 1, § 8, clause 3, which is as follows: . Congress shall have power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes," and said public laws of Maine are not valid.

Also, that said public laws of Maine are especially repugnant to Art. 1, § 8, of the Constitution of the United States.

Also, are repugnant to Art. 1, § 9, clause 5 of the said Constitution of the United States.

Also, to Art. 4, § 2, clause 1 of said Constitution of the United States, and said public laws of Maine relating to licénses of hawkers and peddlers are invalid on the ground of their being repugnant to said constitution, treaties or laws of the United States.

2d. That in this case there is drawn in question the validity of a statute of the said State of Maine, or an authority exercised under said authority of the State of Maine, on the ground of its being repugnant to the constitution, treaties or laws of the United States, and that said public laws of Maine above quoted are not valid, on the ground of their being repugnant to the constitution, treaties and laws of the United States.

3d. That in this case there is claimed a certain title, right, privilege or immunity under the constitution and statutes of the United States, and that said public laws of said State of Maine relating to licenses of hawkers and peddlers, and which are more particularly set forth above, under item No. 1, are repugnant to said title, right, privilege or immunity so claimed, and for that reason are not valid.

4th. That said public laws of Maine are not uniform, and they discriminate in favor of one class of individuals against another, and are not valid.

5th. That the evidence in this case shows that the respondent, Montgomery, was an agent or employee of the Chicago Portrait Co., a foreign corporation, duly organized and existing by the laws of the State of Illinois, and that all acts done by said Montgomery,

as shown by the evidence in this case, were commercial transactions between citizens of different states.

6th. That the evidence in this case shows that all pictures and picture frames which the respondent Montgomery carried for sale and exposed for sale without a license, were made out of the State of Maine and were sent into the State of Maine by said Chicago Portrait Co. by freight, directed to said Chicago Portrait Co., Farmington, Maine.

7th. That the evidence in this case shows that the respondent Montgomery, was an agent or employee of said Chicago Portrait Co., and that whether the transactions were conducted directly or entirely by the principals themselves, or in part by the agency of said Montgomery, is of no consequence; it is interstate commerce in both instances.

8th. That the State of Maine has no right to impose a license or tax as is provided in said public laws of Maine relating to licenses of hawkers and peddlers, and under the Constitution of the United States the power is expressly given to Congress to regulate commerce among the several states, and that the tax or license here involved is in reality a tax on the principals and their business, and ultimately on their goods, and, being so, it is necessarily a tax on interstate commerce.

9th. That Montgomery, the respondent, being only a soliciting agent and representative in this State of his principal, the Chicago Portrait Co., in the State of Illinois, any license or tax upon the principals will be tantamount to a tax upon the business of the principals, and a tax upon the business would operate as a tax upon the articles themselves, namely, the enlarged pictures and frames sent into this State.

10th. The laws of the State of Maine above quoted, relating to licenses of hawkers and peddlers, exempt a certain class of persons from the payment of the fees provided in said laws. This is repugnant to the Constitution of the United States.

11th. That the tax or license imposed by the above quoted

laws of the State of Maine, relating to hawkers and peddlers, is obnoxious to the Constitution of the United States, and for that reason is null and void, and that the evidence does not show that the respondent, Montgomery, has committed any offense under any valid laws of the State of Maine, and that the jury be instructed to return a verdict of not guilty.

12th.   That said statutes of Maine discriminate against goods brought from foreign countries and are repugnant to the Constitution of the United States for that reason.

13th.   That said statutes of Maine discriminate against citizens of said state of Maine and are repugnant to the Constitution of the United States and not valid.

14th.   That the jury be instructed to return a verdict of not guilty.

A copy of the evidence is made a part of the case.   The bill of exceptions also shows the written refusal seriatim of the presiding justice to each requested instruction.

*Elmer E. Richards*, county attorney, for State.

*Clarence Hale, Arthur F. Belcher and Joseph C. Holman*, for defendant.

The power of Congress to regulate commerce is complete in itself, and knows no limitations other than those prescribed in the instrument conferring it.   *Gibbon* v. *Ogden*, 9 Wheat. 1; *Brown* v. *Maryland*, 12 Wheat. 419; *Leisy* v. *Hardin*, 135 U. S. 108.

All acts done by the respondents, as shown by the evidence in this case, were commercial transactions between citizens of different states.

The respondent being an agent or employee of the Chicago Portrait Company, it is immaterial whether the transactions were conducted directly or entirely by themselves, or any part by the agency of the respondent; it is interstate commerce in both instances, Montgomery being only a representative in this state of his principal in the state of Illinois.   *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, pp. 494, 495; *State* v. *Scott*, 98 Tenn. 254.

Respondent being only a soliciting agent and representative in

this state of his principal, the Chicago Portrait Company in the state of Illinois, any license or tax upon the principals will be tantamount to a tax upon the business of the principals, and a tax upon the business will operate as a tax upon the articles themselves, namely the enlarged pictures and frames sent into this state, and is clearly a tax in violation of Item 5, of § 9, of Article 1 of the Constitution of the United States, which provides that,

" No tax or duty shall be laid on articles exported from any state." *Brennen* v. *Titusville*, 153 U. S. 289; *Brown* v. *Maryland*, 12 Wheat. 419; *Leloup* v. *Mobile*, 127 U. S. 640; *McCall* v. *California*, 136 U. S. 104; *Welton* v. *Missouri*, 91 U. S. 275; *Crutcher* v. *Kentucky*, 141 U. S. 58; *Lyng* v. *Michigan*, 135 U. S. 161; *State* v. *Coop*, 52 So. Car. 508.

The statutes of Maine discriminate against goods brought from foreign countries, and are repugnant to the Constitution of the United States. *State* v. *Furbush*, 72 Maine, 493; *Welton* v. *Missouri*, 91 U. S. 275; *Tiernan* v. *Rinker*, 102 U. S. 123; *Guy* v. *Mayor, etc., of Baltimore*, 100 U. S. 434.

The laws of Maine relating to licenses of hawkers and peddlers discriminate in favor of certain classes of citizens of said State of Maine and in favor of citizens of the United States as against citizens of other countries, and are repugnant to the Constitution of the United States. *St. Louis* v. *Speigel*, 90 Mo. 587; *Kneeland* v. *Pittsburg*, 11 Atl. Rep. (Pa.) 657.

SITTING: WISWELL, C. J., EMERY, HASKELL, STROUT, SAVAGE, FOGLER, JJ.

SAVAGE, J. This case has been once before this court upon a report of facts agreed, 92 Maine, 433, with the result that the case was ordered to "stand for trial." At the trial at nisi prius, the respondent was found guilty of going about from place to place in Farmington, then and there carrying for sale and exposing for sale certain picture frames without being licensed therefor, and in violation of the laws of 1889, chap. 298, as amended by the laws of 1893, chap. 282, and chap. 306. He now brings the case forward upon exceptions to certain instructions which were given, and cer-

tain which were refused to be given, to the jury by the presiding justice. We do not deem it necessary to consider the exceptions seriatim. The several requested instructions present the grounds upon which the respondent bases his claim that the statute in question is unconstitutional; but we shall, we think, be able to dispose of the case by a consideration of the instruction which was actually given to the jury, and which was "that the defendant was amenable to the statute of this state, the act of 1889, chapter 298, relating to Hawkers and Peddlers; that he was not protected or justified by any law of this state or by the constitution of the state, or by the constitution of the United States, or by act of Congress, in performing these acts, without a license granted to him under the provisions of our own statute." This instruction raises in the broadest manner the constitutionality of the Hawkers' and Peddlers' Act. The facts relied upon by the state to support the prosecution are the same which are stated in the opinion in 92 Maine, 433. We shall not review that opinion, nor do we intend to change it. So far as concerns any point that was decided then, it stands.

Much of the argument of the learned counsel for the respondent, relating to the interstate commerce clause of the United States constitution, we think is inapplicable to the facts presented. In exceptions and in argument, they overlook the fact, as we deem it to be, that the picture frames in question, at the time of the alleged offense, had ceased in any way to be the subject of interstate commerce. They had been shipped to this state unsold. They had been taken from the carrier. The packages had been opened, and the respondent was carrying them about from place to place in this state offering them for sale. No person had agreed to buy them, or any of them, before they were shipped here. No person here was under any contract with regard to them. Another agent of the respondent's employer had secured orders for pictures, and "on securing an order," *left* a contract with the party giving the order, in which it was stated that "all portraits are delivered in appropriate frames" which patrons may buy or not as they desire. It does not even appear that the picture frames were in any way an

inducement to the giving of the order. It rather appears that the statement in the "contract" was made as an inducement to the patrons to buy, at some future time, picture frames "*at greatly reduced* prices." Quod est demonstrandum.

These considerations we think take this case out of the protection of the interstate commerce provision of the constitution giving to Congress the power to regulate "commerce among the states." Nor does the fact that the Hawkers' and Peddlers' Act may, under some conditions, be void as to goods which are at the time the subject of interstate commerce necessarily render it invalid as to all goods under all conditions.

A legislative act may be entirely valid as to some classes of cases and clearly void as to others. Cooley on Const. Limitations, 6th Ed., p. 213. Judge Cooley says: "If there are any exceptions to this rule, they must be of cases only where it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the legislature will be defeated if it shall be held valid as to some cases and void as to others." *Tiernan* v. *Rinker*, 102 U. S. 123; *Packet Co.* v. *Keokuk*, 95 U. S. 80. This is undoubtedly sound doctrine. To illustrate: If it were held otherwise, our highway damage law would have been rendered entirely inoperative by the decision in *Pearson* v. *Portland*, 69 Maine, 278, holding that a single provision in the statute which existed then was obnoxious to the clause in the Fourteenth Amendment declaring that no state shall deny to persons within its jurisdiction the equal protection of the laws. Such, too, would have been the effect upon our prohibitory liquor law by the decision in *State* v. *Intoxicating Liquors*, 85 Maine, 158, holding, under the laws which then existed, that intoxicating liquors in the possession of a common carrier and in transit from another state to this were "commerce among the several states," and so within the protection of the interstate commerce provision of the Constitution of the United States. But no one would claim, we think, that either of these statutes was to be regarded as wholly unconstitutional because a single provision was held unconstitu-

tional.  *Presser* v. *People of Illinois*, 116 U. S. 252; *Rothermel* v. *Meyerle*, 136 Pa. St. 250.

Accordingly, we hold that whatever may be the effect of the statute as to goods which are properly subject to interstate commerce protection, it is clearly constitutional, in this respect, as to goods which have completed their transit, have ceased to be objects of interstate commerce, and have become a portion of the mass of the property in the state, as in this case.  When goods are sent from one state to another for sale, or in consequence of a sale, they become part of its general property, and amenable to its laws, provided that no discrimination be made against them as goods from another state.  *Robbins* v. *Shelby Co. Taxing District*, 120 U. S. 489; *Brown* v. *Houston*, 114 U. S. 622; *Howe Machine Co.* v. *Gage*, 100 U. S. 676.  When a package is broken up for use or for retail, by the importer, it ceases to be under interstate commerce protection, and becomes subject to the laws of the state, and its sale may be regulated by the state like any other property.  Cooley on Const. Limitations, 6th Ed., p. 717; *License Cases*, 5 Howard, 589; *Brown* v. *Maryland*, 12 Wheat. 419; *Cook* v. *Pennsylvania*, 97 U. S. 566.

A statute of a state, by which peddlers of goods, going from place to place within the state to sell them, are required, under a penalty, to take out and pay for licenses, and which makes no discrimination betwen residents of the state and those of other states, is not, *as to peddlers of goods previously sent to them by manufacturers in other states*, repugnant to the grant by the Constitution to Congress of the power to regulate commerce among the several states.  *Emert* v. *Missouri*, 156 U. S. 296.

But the respondent goes further, and raises a question not raised at the former hearing of this case, and not then considered or decided.  He says that the provision in section 2 of the Hawkers' and Peddlers' Act, which provides that a license shall be granted "to any citizen of the United States" . . . but "to no other person," is obnoxious to the Fourteenth Amendment to the Constitution of the United States, by which it is declared that "no State shall make or enforce any law which shall abridge the privileges or

immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." It is clear that by the provisions of the statute only citizens of the United States can be licensed to peddle. An alien cannot be licensed. A discrimination is made between citizens and aliens. Does this discrimination violate the constitutional provision which we have cited? This presents a federal question, and properly we seek an answer first in the decisions of the United States courts.

If this were a question of discrimination against "citizens of the United States," the solution would be easy. The *privileges and immunities* guaranteed by the clause in the Constitution, which declares that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states, are said in *Paul* v. *Virginia*, 8 Wall. 168, to be the relief "from the disabilities of alienage in other states; it (the clause in question) inhibits discriminating legislation against them by other states; it gives them the right of ingress into other states and egress from them; it insures to them in other states the same freedom possessed by the citizens of those states in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other states the *equal protection of their laws.*"

It is not in the power of one state, when establishing regulations for the conduct of private business of a particular kind, to give to its citizens essential privileges connected with that business which it denies to citizens of other states. See *Blake* v. *McClung*, 172 U. S. 239.

The use of the phrase "privileges and immunities," in the constitutional provision referred to, plainly and unmistakably secures and protects the right of a citizen of one state to pass into any other state of the Union for the purpose of engaging and when there, of engaging in lawful commerce, trade or business without molestation. *Ward* v. *Maryland*, 12 Wallace, 418; *Corfield* v. *Coryell*, 4 Wash. C. C. 371; *Slaughter House Cases*, 16 Wall. 36; *In re Watson*, 15 Fed. Rep. 511; *Sayre Borough* v. *Phillips*, 148

Pa. St., 482; *Bliss's Petition*, 63 N. H, 135; *State* v. *Lancaster*, 63 N. H. 267; *State* v. *Wiggin*, 64 N. H. 508.

The decisions all hold in effect, and some of them in terms, that the business of peddling, which is lawful in itself, cannot be regulated by a state so as to discriminate against citizens of the United States. We do not see how it could be held otherwise. It is a "privilege" to be enjoyed on equal footing with citizens of the state.

But, on the other hand, an alien is not a citizen. He is, however, a "person" whom the state cannot deprive of life, liberty or property without due process of law, and to whom the state cannot deny, while he is within its jurisdiction, "the equal protection of the laws." This was settled in *Yick Wo* v. *Hopkins*, 118 U. S. 356. It was the case of an unnaturalized Chinaman, and it was held that the "constitutional provisions are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality." See also *Fraser* v. *McConway & Torley Co.*, 82 Fed. Rep. 257. While an alien is not entitled to the "privileges and immunities" of a citizen, strictly as such, under the first clause of the Fourteenth Amendment which we have quoted, he is, while within our jurisdiction entitled to the "equal protection of the laws."

And after all, the distinction between the practical rights of the citizen under the guaranty of "privileges and immunities" and the rights of the alien "within the jurisdiction," under the guaranty of "the equal protection of the laws" is, so far as the prosecution of the business of peddling is concerned, shadowy and unsubstantial. One has the privilege; the other the right of a protection equal to that of the citizen. This want of distinction is noticed by Swayne, J., in the *Slaughter House Cases*, 16 Wall. 36, who, after referring to the rights secured to citizens, said: "In the next category, obviously ex industria, to prevent as far as may be the possibility of misinterpretation, either as to persons or things, the phrases 'citizens of the United States' and 'privileges and immunities' are dropped, and more simple and comprehensive terms are substituted. The substitutes are 'any person', and

'life', 'liberty' and 'property', and 'the equal protection of the laws'. 'The equal protection of the laws' is guaranteed to all. 'The equal protection of the laws' places all upon a footing of legal equality, and gives the same protection to all for the preservation of life, liberty and property and the pursuit of happiness." To be sure, these words are found in a dissenting opinion, but they were not concerning any subject of dissent, and are entitled to weight as the expression of a wise and experienced judge. In fact, as we shall hereafter see, this construction of the phrase, " equality of the laws," has been adopted, with greater particularity, by the Supreme Court of the United States. It was concerning this clause that the court, in *Strauder* v. *West Virginia*, 100 U. S. 303, asked: "What is this but declaring that the law in the states shall be the same for the black as for the white, that all persons, whether colored or white, shall stand equal before the laws of the states,  .  .  .  .  that no discrimination shall be made against them because of their color?"

The language of Justices Field and Clifford in *Ex parte Virginia*, 100 U. S. 339, is that, "the reach and influence of the amendment are immense. It opens the courts of the country to every one on the same terms, for the security of his person or property, the prevention and redress of wrongs and the enforcement of contracts; it assures to every one the same rules of evidence and modes of procedure; it allows no impediments to the acquisition of property and the pursuit of happiness, to which all are not subjected; it suffers no other or greater burdens or charges to be laid upon one than such as are equally borne by all others.  .  .  .  . It secures to all persons their civil rights upon the same terms."

Says Field, J., in *Neal* v. *Delaware*, 103 U. S. 370, dissenting from the proposition that practical exclusion of colored persons from the jury was a denial of that equality of protection which has been secured by the constitution and laws of the United States,—

" Equal protection of the laws of a state is extended to persons within its jurisdiction, within the meaning of the amendment, when its courts are open to them on the same condition as to others, with like rules of evidence and modes of procedure, for the security

of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; when they are subjected to no restrictions in the acquisition of property, the enjoyment of personal liberty and the pursuit of happiness, which do not greatly affect others; when they are liable to no other or greater burdens and charges than such as are laid upon others; and when no different or greater punishment is enforced against them for a violation of the laws."

Like definitions of the clause "equal protection of the laws" are found in *Pace* v. *Alabama*, 106 U. S. 583; *Minneapolis, etc., Ry. Co.* v. *Beckwith,* 129 U. S. 26.

In the *Civil Rights Cases*, 109 U. S. 3, it was declared that "many wrongs may be obnoxious to the prohibitions of the Fourteenth Amendment which are not in any just sense incidents or elements of slavery. Such for example, would be · · · denying to any person or class of persons, the right to pursue any peaceful vocations allowed to others. What is called class legislation would belong to this category, and would be obnoxions to the prohibitions of the Fourteenth Amendment. · · · The Fourteenth Amendment extends its protection to races and classes, and prohibits any state legislation which has the effect of denying to any race or class, or to any individual, the equal protection of the laws."

In *County of Santa Clara* v. *Southern Pac. R. R. Co.*, 118 U. S. 396, (18 Fed. Rep. 385), it is said: "By equal protection is meant equal security to every one in his private rights,—in his right to life, to liberty, to property, and to the pursuit of happiness. It implies not only that the means which the laws afford for such security shall be equally accessible to him, but that no one shall be subject to any greater burdens and charges than such as are imposed upon all others under like circumstances. This protection attends every one every where, whatever be his position in society or his association with others, either for profit, improvement or pleasure."

See also *Ho Ah Kow* v. *Nunan*, 5 Sawyer, Circuit Court, 552, (Federal Cases, No. 6546.)

So in *Barbier* v. *Connolly*, 113 U. S. 27, it was said, "the Four-

teenth Amendment in declaring that no state 'shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property . . . . that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition." And such is the construction which this court, following the federal court, has given to the amendment in question. *Leavitt* v. *Canadian Pac. Railway Co.*, 90 Maine, 153.

While it is held that the Fourteenth Amendment does not interfere with the police power of a state, it is also held that the police regulations must be impartial. The court said in *Barbier* v. *Connolly*, supra, " though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation which in carrying out a public purpose is limited in its application, if within the sphere of its operation, it affects alike all persons similarly situated, is not within the amendment." *Minneapolis, etc., Railway Co.* v. *Beckwith*, 129 U. S. 26 ; *State* v. *Dering*, 84 Wis. 585.

The specific regulations for one kind of business which may be necessary for the protection of the public can never be just ground of complaint because like restrictions are not imposed upon other business of a different kind. The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges upon the same conditions. *Soon Hing* v. *Crowley*, 113 U. S. 703.

See also *Missouri Pacific Ry.* v. *Mackey*, 127 U. S. 205; *Marchand* v. *Penn. R. R. Co.*, 153 U. S. 380; *Leavitt* v. *Canadian Pac. Railway Co.*, 90 Maine, 153.

The inhibition of the Fourteenth Amendment that no state shall deprive any person within its jurisdiction of the equal protection of the laws was designed to prevent any person, or class of persons, from being singled out as a special subject for discriminating and hostile legislation. *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181; *Janesville* v. *Carpenter*, 77 Wis. 288; *Nashville, etc., Ry. Co.* v. *Taylor*, 86 Fed. Rep. 168.

*In re Tiburcio Parrott*, 1 Fed. Rep. 481, holding unconstitutional a provision in the constitution of California which prohibited corporations from employing Chinese or Mongolians, the court said: "It appears that to deprive a man of the right to select and follow any lawful occupation . . . . is to deprive him of both liberty and property within the meaning of the Fourteenth Amendment."

A statute of Pennsylvania imposing a tax of three cents a day upon employers of foreign born, unnaturalized male persons, for each day that each of such persons may be employed, and authorizing the deduction of that sum from the wages of such employees, was held to deprive the latter of the equal protection of the laws. *Fraser* v. *McConway & Torley Co.*, 82 Fed. Rep. 257. The court said: "Evidently the act is intended to hinder the employment of foreign born, unnaturalized male persons. The act is hostile to and discriminates against such persons. It interposes to the pursuit by them of their lawful avocations, obstacles to which others under like circumstances are not subjected."

While it is true, as a general proposition, that if the law deals alike with all of a certain class, it is not obnoxious to the charge of a denial of equal protection, yet it is equally true that such a classification cannot be made arbitrarily. The state may not say that all white men shall be subjected to the payment of attorney's fees of parties successfully suing them, and all black men not. It may not say that all men beyond a certain age shall be alone thus subjected, or all men possessed of a certain wealth. These are

distinctions which do not furnish any proper basis for the attempted classification. That must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily, and without any such basis. *Gulf, Colorado & Santa Fe Ry.* v. *Ellis*, 165 U. S. 150. See *Pearson* v. *Portland*, 69 Maine, 278.

In the light of these interpretations of the Fourteenth Amendment, we are compelled to conclude that a statute which forbids peddling except under a license, and which provides that citizens of the United States may be licensed, and that aliens shall not be, is a denial of the " equal protection of the laws." It is an unconstitutional discrimination against aliens. It does more than impose unequal burdens and charges upon the alien. It absolutely denies him the privilege of an occupation open to citizens, which is more than a discrimination in burdens. It does not permit the alien within our jurisdiction to pursue a business occupation and to acquire and enjoy property on equal terms with the citizen. *Yick Wo* v. *Hopkins*, supra.

Nor can this discrimination be sustained as a constitutional exercise of the police power of the state. It must be noticed that the discrimination is not against a class, as criminals, as paupers, as intemperate, as disqualified by character or habits, or as harmful to society; but against a class solely as aliens. Such a discrimination is forbidden. *Gulf, Colorado & Sante Fe Ry.* v. *Ellis*, supra.

And, although, in this case the discrimination was not injurious to the respondent, because he was not an alien and was not thereby prohibited from obtaining a license, still, for reasons already suggested, we think the Hawkers' and Pedlers' Act must be regarded as invalid in toto. We cannot separate the constitutional part from the unconstitutional. The distinction between citizens and aliens is fundamental in the scheme for licensing.

The statute is invalid as to aliens. They may peddle without license. If we hold it is nevertheless valid as to citizens, it works a discrimination against citizens and in favor of aliens,—a result which we think the legislature plainly did not intend. Cooley on Constitutional Limitations, 213.

*Exceptions sustained.*