SARGENT P. KNUT *v.* JOHN K. NUTT, ADMINISTRATOR, ET. AL.

> 83   365
> 84   466
> 85   197

1. ASSIGNMENTS. *United States. Claims against. Revised statutes of U. S., sec.* 3477. *Attorneys. Contracts with. Fees for professional services.*

> Under Revised Statutes of the United States, sec. 3477, providing that all transfers and assignments of claims against the United States, or any interest therein, and all powers of attorney for receiving payment of any such claim, or part thereof, shall ve void, unless made after the allowance of such claim:

> (*a*) An irrevocable power authorizing an attorney to prosecute a claim against the United States before any of the United States courts or any departments of the government, made before the allowance of the claim, is void; but

> (*b*) A written agreement, made before the allowance of the claim, to pay an attorney an amount equal to one-third of any sum that might be allowed on a claim against the government, in consideration of services in securing its allowance, is valid, although executed at the same time with a void assignment of the claim to the attorney; since

> (*c*) Such a fee agreement does not invest the attorney with an interest in, or lien upon, the claim, but merely measures the personal obligation of the claimant to the attorney upon his services proving successful.

2. SAME. *"Diplomatic negotiations." Improper services.*

> The obligation of an attorney to prosecute a claim against the government in the courts or through such "diplomatic negotiations" as might be deemed by him best for the interests of his client, is not invalid, in the absence of proof that the parties by the use of the words "diplomatic negotiations" contemplated an improper procedure, or that improper services were rendered.

FROM the chancery court of Adams county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

Knut, the appellant, was the complainant, and Nutt, administrator, and other, appellees, were defendants in the court below.

In May, 1874, a contract was entered into between Mrs. Julia A. Nutt, administratrix of the estate of Haller Nutt, and one Denver, an attorney, the material part of which is set out in the opinion of the court, by which Denver undertook to prosecute a claim of the estate of Haller Nutt against the United States Government for the use of property, and for property of which said estate was deprived, during the Civil War, by the officers of the government, amounting to $1,000,000. By consent of Mrs. Nutt, administratrix, this contract was transferred on March 19, 1887, by Denver, to appellant, Sargent P. Knut. In pursuance of this agreement, Sargent P. Knut prosecuted this claim before the quartermaster general, before congress, and before the court of claims, and in May, 1902, succeeded in getting an appropriation to pay the estate of Haller Nutt the sum of $89,993.83. Pending the prosecution of the claim, Mrs. Julia Nutt died, and one Williams was appointed in her place, and he also died, and John K. Nutt, appellee, was appointed to succeed him, and, as such administrator, received the money. Appellant, Sargent P. Knut filed his bill of complaint in this case in the chancery court against John K. Nutt, administrator, and the other heirs of Haller Nutt, to recover 33 1-3 per cent. of the amount collected from the government, under the contract which had been assigned to him; and by amendment to his bill, he claimed that, if he was not entitled to pay under the contract, he was entitled to reasonable compensation for his services, equaling $30,000. All the heirs of Haller Nutt, except three, answered by purely formal answers, and submitted the matter to the judgment of the court. The other three denied that Sargent P. Knut was entitled to any compensation, and set up that the contract with Denver, which was assigned to Sargent P. Knut, was contrary to good morals and public policy, and therefore null and void. Much testimony was taken, and on final hearing the chancellor held that complainant was not entitled to recover, because the contract was violative of the United States

statutes, and null and void, and dismissed the petition. From that decree complainant appealed to the supreme court.

*Catchings & Catchings,* for appellant.

On the question that, if the attorney procured personal solicitations to be made to members of Congress, the contract, which was valid in its inception, did not thereby become invalid, counsel cited *Barry* v. *Capen,* 151 Mass., 99, 23 N. E., 735, 6 L. R. A., 808; *Fox* v. *Rogers,* 171 Mass., 546, 50 N. E., 1041; *Mc-Dearmott* v. *Sedgewick,* 140 Mo., 172, 39 S. W., 776; *Sawyer* v. *Taggart,* 77 Ky., 734; *Armstrong* v. *Bank,* 133 U. S., 439, 10 Sup. Ct., 450, 33 L. Ed., 747; *Faikney* v. *Reynous,* 4 Burrows, 2069; *Petrie* v. *Hannay,* 3 Tr. 418; *Farmer* v. *Russell,* 1 B. & P., 296; *Planter's Bank* v. *Union Bank,* 16 Wall., 483, 21 L. Ed., 473; *McBlair* v. *Gibbes,* 17 How., 232-236, 15 L. Ed., 132; *Bly* v. *Sec. Bank,* 79 Pa., 453; *Brooks* v. *Martin,* 2 Wall., 70, 17 L. Ed., 732.

A contract to prosecute a claim before the Southern Claims Commission was legitimate and valid. *Taylor* v. *Bemiss,* 110 U. S., 43, 3 Sup. Ct., 441, 28 L. Ed., 64; *Bergen* v. *Frisbie,* 125 Cal., 168, 57 Pac., 784; *Bryan* v. *Reynolds,* 5 Wis., 200, 68 Am. Dec., 55; *Houlton* v. *Nichol,* 93 Wis., 393, 67 N. W., 715, 33 L. R. A., 166, 57 Am. St. Rep., 928; *Coquillard's Adm'r.* v. *Bearss,* 21 Ind., 479, 83 Am. Dec., 362; *Gil* v. *Williams,* 12 La. Ann., 219, 68 Am. Dec., 767; *Hatzfield* v. *Gulden,* 7 Watts, 152, 31 Am. Dec., 750; *Mills* v. *Mills,* 40 N. Y., 543, 100 Am. Dec., 535; *Hunt* v. *Test,* 8 Ala., 719, 42 Am. Dec., 659; *McBratney* v. *Chandler,* 22 Kan., 692, 31 Am. Rep., 213; *Powers* v. *Skinner,* 34 Vt., 274, 80 Am. Dec., 677; *Chippewa Co.* v. *Chicago,* 75 Wis., 224, 44 N. W., 17, 6 L. R. A., 601; *Bermudez Co.* v. *Critchfield,* 62 Ill. App., 221; *Oscanyon* v. *Arms Co.,* 103 U. S., 261, 26 L. Ed., 539; *Rose* v. *Truax,* 21 Barb., 361; *Harris* v. *Roof's Executors,* 10 Barb., 489; and *Cary* v. *Western Union Co.,* 47 Hun., 614.

An attorney is entitled to recover for his services, even if he

resorted to lobbying practices.  *Gilliam* v. *Brown,* 43 Miss., 641;
*McMullen* v. *Hoffman,* 174 U. S., 639, 19 Sup. Ct., 839, 43 L.
Ed., 1117.

*Reed & Brandon, Brown & Martin,* and *J. A. Clinton,* for
appellees.

The appellant, Knut, is not entitled to recover for the follow-
ing reasons:

1. Because the contract with Denver is a lobbying contract,
and therefore null and void in its inception, and Knut has no
rights and can have none thereunder; and

2. Because the services, if any, rendered and intended to be
rendered by Knut were lobbying services, contrary to positive law
and to public policy, and appellant cannot recover for such
services upon a *quantum meruit.*

The contract with Denver was a lobbying contract.  The
words "through any diplomatic negotiations" must mean some-
thing.  What diplomatic negotiations could possibly be rendered
by an attorney of a citizen of the United States against the gov-
ernment of a proper and legal nature?  Can the words in this
instance be intended for any purpose except to conceal and cover
"lobbying services" intended by both parties to be rendered?

If appellant cannot recover upon the Denver contract, then he
cannot be awarded a fee upon a *quantum meruit.*

Any services that may have been rendered were rendered in
pursuance of the contract.  That which vitiates the contract,
vitiates the right of Knut to recover upon a *quantum meruit* for
*those services.*  Moreover the effective services were unques-
tionably of a lobbying character.

On the questions involved counsel cited the following author-
ities: *Nutt* v. *United States,* 125 U. S., 650; Revised Statutes of
the United States, sec. 3477; *Harris* v. *Oil Mill.,* 78 Miss., 603;
*Wylie* v. *Cox,* 15 How. (U. S.), 415; *Wright* v. *Tebbitts,* 91 U.
S., 252; *Stanton* v. *Embry,* 93 U. S., 548; *Taylor* v. *Bemis,* 110
U. S., 42; *Price* v. *Forrest,* 173 U. S., 410; *Sanborn* v. *Maxwell,*

---

---

29 Wash. Rept., 436; *Owens* v. *Wilkinson,* 30 Wash. Rept., 436; *Spofford* v. *Kirk,* 97 U. S., 484; *Hager* v. *Swayne,* 149 U. S., 242; *Ball* v. *Halsell,* 161 U. S., 72; *Sweeney* v. *McLeod,* 15 Or., 338, 17 Am. & Eng. Enc. Law, 28; *Trist* v. *Childs,* 21 Wal. (U. S.), 441; *Alpers* v. *Hunt,* 9 L. R. A., 482; *Marshall* v. *Baltimore, etc., R. R. Co.,* 16 How. (U. S.), 313, 15 Am. & Eng. Enc. Law (2d ed.), 969; *Ib.,* 989; *Usher* v. *McBrantley,* 3 Dillon, 385; *Providence Tool Co.* v. *Norris,* 2 Wall. (U. S.), 45; *Hayward* v. *Nordberg Mfg. Co.,* 85 Fed., 4; *Boyd* v. *Barclay,* 34 Am. Dec., 762; *Hunt* v. *Test,* 42 Am. Dec., 659; *Weed* v. *Black,* 2 McArthur, 268; *Bermudez* v. *Critchfield,* 62 Ill., 221; *Goodrich* v. *Tenny,* 144 Ill., 422; *Cook* v. *Shipman,* 24 Ill., 614; *McBrantley* v. *Chandler,* 31 Am. Rep., 213; *Houlton* v. *Dunn,* 30 L. R. A., 737; *Houlton* v. *Nichols,* 33 L. R. A., 166; *Millbank* v. *Jones,* 24 Am. St. Rep., 454; *Spaulding* v. *Ewing,* 149 Pa. St. Rep., 379; *Meguire* v. *Corwine,* 101 U. S., 111; *Edwards County* v. *Jennings,* 89 Tex., 620; *Rose* v. *Truax,* 21 Barbour, 361; *Brown* v. *Brown,* 34 Barbour, 533.

Argued orally by *T. C. Catchings,* for appellant, and by *J. A. Clinton,* for appellee.

CALHOON, J., delivered the opinion of the court.

Section 3477, Rev. St. U. S. (U. S. Comp. St., 1901, p. 2320), reads as follows (the italics being ours): "All *transfers* and *assignments* made of any claim upon the United States, or of any *part* or *share* thereof, or *interest therein,* whether absolute or conditional, and *whatever may be the consideration* therefor, and all *powers of attorneys,* orders or other authorities for *receiving payment* of any such claim, or of any *part* or *share* thereof, shall be absolutely *null and void,* unless they are freely made and executed in the presence of at least *two attesting witnesses,* after the allowance of such claim, the ascertainment of the amount due, and the *issuance of a warrant* for the payment thereof." Appellant Knut petitioned the chancery court to cause John K. Nutt,

the present administrator of the estate of Haller Nutt, deceased, to pay him 33 1-3 per cent of $89,993,83, recently received by this administrator from the United States government, and his contingent fee for services as attorney at law under a written contract, with which he is in privity, as assignee of it, made between one Denver and Julia A. Nutt, then executrix of Haller Nutt, on May 18, 1874. In an amended petition he asks that, if he be not entitled under the contract, he be allowed $30,000 as the reasonable value of his services. It is not to be disputed that, if Denver could have recovered, Knut can recover, this being the only contract. Mr. Knut exhibits with his petition two papers, each dated May 18, 1874, and each signed by the executrix. One puts in Denver's charge the claim of about $1,000,000, and says: "To prosecute the same before any of the courts of the United States, and upon appeal to the supreme court of the United States, or before any of the departments of the government, or before the congress of the United States, or before any officer, or commission or convention specially authorized to take cognizance of said claim, or *through any diplomatic negotiations as may be deemed best by him for the interests of the party of the second part*" (the executrix). (The italics are ours.) This paper then proceeds as follows (the italics being ours): "The party of the second part (the executrix) agrees to pay the party of the first part a *sum equal to* 33 1-3 per cent of the amount which may be allowed on said claim, the payment of which *is hereby made a lien upon said claim and upon any draft, money, or evidence of indebtedness which may be paid or issued* thereon." The other paper, signed by the executrix on the same day (May 18, 1874), is a power of attorney, irrevocable, and, in so far as pertinent, is as follows (the italics being ours): "For me and in my name, place and stead, to prosecute a certain claim," etc., "before any of the courts of the United States, and upon appeal to the supreme court of the United States, or before any departments of the government, or before the congress of the United States, and upon appeal to the supreme court of the

United States, or before any department of the government, or before any officer, or commission or convention specially author- ized to take cognizance of said claim, *or through any diplomatic negotiations, and to collect the same . . .* and to *receipt and sign all vouchers* and bonds of indemnity or appeal, and to *en- dorse all drafts and vouchers in my name,"* etc.    This latter paper is attested by two witnesses, but the execution of both was about twenty-five years before, and was not after the ascertain- ment and allowance of the claim and issuance of the warrant, as the statute requires, and so the power of attorney is void.    How- ever, it does not appear that it was ever acted on, and the money was collected directly by the administrator.    But because the power of attorney was void, it does not therefore follow that the contract in the first paper referred to, for the fee, was also void. The two are separable, and the one may stand while the other falls.

The first question for consideration is whether the contract is void on its face.    Very clearly it is not, unless some special sig- nificance be attached to the words, "or through any diplomatic negotiations as may be deemed by him best for the interests of the party of the second part."    What these words mean, no one connected with this litigation as counsel seems to know.    Cer- tainly this court does not know, but it cannot construe them to convey an illegal meaning.    They may mean the mere diplomatic tact of courteous manner and bearing in dealing with objections in the dispositions of items of the claim, which would be the law- yer's duty.    They may mean divers things, proper and improper, and so the meaning must be attached to them, on their face, which would be proper.    "When a contract is capable of two construc- tions, the one making it valid and the other void, it is clear law the first ought to be adopted."    3 Am. & Eng. Enc. Law (1st ed.), p. 869, note; *Clay* v. *Allen,* 63 Miss., 426; *Merrill* v. *Melchior,* 30 Miss., 516; *Wilkins* v. *Riley,* 47 Miss., 313.    This question is therefore settled on general common law principles, and by the express adjudication of our own courts.    So we conclude, on the

face of the contract, that the court below erred in so much of the final decree as pronounces it void as "violative of the United States statute laws."

The validity of this contract is in no way disturbed by the case of *Owens* v. *Wilkinson* 30 Wash. Law Rep., p. 436. This case showed an agreement that the counsel should have an "interest in said claim equal to one-half of the total amount received at the date of the settlement of said claim by the accounting officers of the treasury," which is requested "to be paid to my said attorney." That contract was the assignment of an interest in the claim, in direct contravention of the statute. In the case now before us the agreement is to pay counsel "a sum equal to 33 1-3 . per cent of the amount which may be allowed on said claim." The difference between "an interest in" and a sum "equal to" seems a thin distinction at first glance, but, when the reason for and language of the statute are considered, it becomes broad and obvious. The government had no intent to interfere with the free transfer of interests in the affairs of men, except in cases where they interfered with the convenient dispatch of its own business. Its disbursing officers had been harrassed by countless notices not to pay, and great numbers of writs of injunctions against paying, claimants, by parties claiming to be assignees of all or part of the money in the treasury for disbursements on private appropriations by congress. So it forbids "all transfers and assignments" of any claim, "or any part or share thereof," or "interest therein," and all "powers of attorney," etc., for "receiving payment, unless made after the issuance of the warrant for the payment thereof." It determined that it would deal with the original claimant only, and have easy bookkeeping. The distinction is aptly and well stated in the opinion in the case of *Owens* v. *Wilkinson,* above referred to, in the words on page 440 as follows: "For the distinction, though subtile, is well established—the one conveying an interest in the fund to be recovered; the other being merely a personal obligation, the extent of which is to be measured by the amount of recovery." Appellees here are not aided

by *Trist* v. *Child,* 21 Wall., 441, 22 L. Ed., 623. There the at-
torney filed his complaint in equity to enjoin the claimant from
withdrawing his part of the money from the treasury. His bill
is based on a contract that he "should receive 25 per cent of
whatever sum congress might allow;" and the attorney got pay-
ment suspended by the disbursing officers by injunction, and
the money was in the treasury when the case was decided by the
supreme court. The court held that the agreement carried on its
face the assignment of an interest in the fund, in giving the at-
torney 25 per cent of whatever sum congress might allow, and
this was enough to decide the case against the attorney. But the
court further found that the "contract," which is not set out in
the record, "was, on the part of Child, to procure by lobby serv-
ice, if possible, the passage of a bill providing for the payment
of the claim." In another part of the opinion it said: "The
agreement in the present case was for the sale of the influence
and exertions of the lobby agent to bring about the passage of a
law for the payment of a private claim, without reference to its
merits, by means which, if not corrupt, were illegitimate," etc.
In every case cited in that opinion the fact was that the original
contract was in violation of the statute. The opinion, in treat-
ing of Child's claim, of a lien, though none was provided for in
the contract, disposes of it by very properly holding that the
contract, being illegal, could not support a lien, and says: "The
bill proceeds upon the grounds of the validity of the original
contract, and a consequent lien in favor of the complainant upon
the fund appropriated." It then shows the contract invalid,
which, of course, destroyed any claim of lien as attorney in
carrying it out, and then decides that the remedy, if any, was
not in equity to enforce a lien, but at law for breach of the
contract. There is no parallelism between that case and this
at bar. If there was, we should follow in the conclusions we
arrive at in this opinion, the mass of later decisions of the
United States supreme court and of our own appellate court.

The decree of the court below in the case before us can-

not be sustained on the ground that appellant procured personal solicitations to be made to members of congress in behalf of the claim. Complainant testifies that he did not, and one of the defendants, who is interested, swears generally that he did. The complainant having exhibited a valid contract, and proved legitimate services, the burden of proof was on defendants to show corruption. But aside from this, it is certain that Mr. Calvin Nutt, the only witness for defendants, gives simply his opinion of what were improper personal solicitations, and in no instance states the facts of the colloquium in any interview with any senator or representative so as to enable a court to judge of its propriety. But suppose there were improprieties of this nature committed in carrying out the valid contract, is it therefore settled that complainant is to have none of the fruits? The government, having paid the money, has no concern in it; and, on the facts here, we do not think defendants should have it all, free from the obligation to complainant. Our own court is committed to this doctrine. *Fewell v. Surety Co.,* 80 Miss., 791, 28 South., 755; *Howe v. Jolly,* 68 Miss., 324, 8 South., 513; *Gary v. Jacobson,* 55 Miss., 207, 30 Am. Rep., 514; *Walker v. Jeffries,* 45 Miss., 165; *Gilliam v. Brown,* 43 Miss., 659. See, also, *Barry v. Capen,* 151 Mass., 99, 23 N. E., 735, 6 L. R. A., 808, which last case seems directly in point. Nearly all, if not all, these authorities, and many others, are cited in the brief of counsel for appellant, to which the profession is referred.

Reversed, and decree here that Sargent P. Knut is entitled to his prayer for 33 1-3 per centum of the amount collected by the administrator ($89,993.83), in full for any advances made by him, and all services rendered, and the cause is remanded for account to be taken accordingly, and for order that any balance of this per cent unpaid be paid to him by the administrator. Costs of both courts to be taxed on appellees.

*Reversed.*