WIRT ADAMS, STATE REVENUE AGENT, *v.* MISSISSIPPI LUMBER COMPANY.

TAXATION.    *Constitution* 1890, *sec.* 112.    *Privilege tax.    Lumber business. Exemption.    Non-exporter.    Interstate commerce.    Constitution of the United States, art.* 1, *sec.* 8, *clause* 3.    *Laws* 1900, *p.* 43, *ch.* 43, *sec.* 8.

The eighth section of the act of March 9, 1900 (Laws 1900, p. 43, ch. 43, sec. 8), purporting to impose a privilege tax "on each land timber mill company," etc., but excepting therefrom sawmill operators who do not ship timber or lumber out of the state, is unconstitutional, in that it violates:

(a) Constitution 1890, sec. 112, declaring that taxation shall be uniform and equal; and

(b) Constitution of the United States, art. 1, sec. 8, par. 3, giving congress power to regulate commerce between the states, since it seeks to impose a tax on interstate commerce.

FROM the circuit court of Clarke county.

HON. JAMES H. NEVILLE, Judge.

Adams, state revenue agent, appellant, an officer of the state, authorized (Laws 1894, p. 29), to sue for and recover delin-

quent taxes of past years, was the plaintiff, and the Lumber
Company, appellee, was defendant in the court below. From
a judgment in defendant's favor, the plaintiff appealed to the
supreme court. The facts are stated in the opinion of the court.

*J. M. Jayne, Jr.,* and *Arthur Fridge,* for appellant.

"The subjects of taxation may be classified at the discretion
of the legislature, and if all of the same class are liable alike
there is no violation of the equality and uniformity required by
the constitution." *Vicksburg Bank* v. *Worrell,* 67 Miss., 47.
It is well settled that, if provisions of this character apply
at all to privilege taxes imposed upon business pursuits and pro-
fessions, all that is necessary in levying them is that all persons
pursuing the same occupation shall be taxed the same amount,
or in the same ratio. *Holberg* v. *Macon,* 55 Miss., 112.

Is a tax on property that may be shipped out of the state for
sale an attempt at interference with interstate commerce? This
question was definitely presented to the supreme court of the
United States in *Nathan* v. *Louisiana,* 8 How. (U. S.), 73. It
was there held that a privilege tax imposed on a dealer in
foreign exchange was no attempt at regulation of interstate
commerce.

The case of *Rothemek* v. *Mayerle,* 9 L. R. A., 366, involved
the construction of a state stautute of almost the same nature as
the one in the case at bar. In that case the court, basing its
opinion on such adjudications of the United States supreme
court as *Brown* v. *Houston,* 8 Wall., 123; *Welton* v. *Missouri,*
91 U. S., 275; *Brown* v. *Maryland,* 12 Wheat., 425; *The Daniel
Ball,* 77 U. S., 557, in no uncertain words held that a tax on
goods while remaining a part of the general mass of state prop-
erty (whether they were to be shipped out of the state or not) in
no way involved an attempt at regulating interstate commerce.

*Samuel H. Terral,* for appellee.

Section 3, ch. 43, Laws 1900, is repugnant to sec. 112 of

the constitution of the state of Mississippi, which provides that "taxation shall be uniform and equal throughout the state," and is therefore void. Bouvier defines taxation as "the process of taxing or imposing a tax;" as "a pecuniary burden for the support of the government." This definition clearly includes a privilege tax where it is imposed for the purposes of revenue. Is the tax in question a revenue tax or a police regulation? As there is nothing inherently dangerous or pernicious in the occupation taxed, as it requires no police regulation—save that incident to all occupations—and as no inquiry whatever is made into the moral fitness or qualifications of those applying for the privilege, but the license is sold to all applying indiscriminately, clearly it is not a police regulation. It is, however, imposed for the purpose of raising revenue, and some of the most law-abiding citizens in the state are engaged in the business sought to be taxed. It is then a revenue tax. In *Mississippi Mills* v. *Cook,* 56 Miss., 40, it was held that "there is to be no discrimination between property of the same class, and it shall not be competent to levy one rate upon country lands and another upon city lands, or one rate upon horses of one breed and another upon horses of a different breed." In *Adams* v. *Bank,* 75 Miss., 701, this doctrine of uniformity and equality was held to include all forms of *ad valorem* taxation, whether state, county or municipal. Why, then, discriminate in occupation taxes of the same class? Why not carry the doctrine a step further, and to its logical conclusion, and make the taxation of privileges uniform and equal? The act in question is not uniform and equal in that it does not apply to all of the same class of sawmill operators, discriminating arbitrarily against those who buy timber without buying the land, and who ship the timber or lumber out of the state and favoring those who buy timber without buying the land, and who do not ship timber or lumber out of the state, even though the sawmill operators have equal capital employed in the business, and have mills of the same capacity. Not being uniform and equal,

the act is void. Cooley on Taxation, 3d ed., pp. 259, 260, 1100'; Judson on Taxation, secs. 456, 459; *North Carolina* v. *Moore,* 22 L. R. A., 472; *New Hampshire* v. *Pennoyer,* 5 L. R. A., 709; *Bank* v. *Worrell,* 67 Miss., 47.

Whatever the intent, the practical effect of the act in question is to impose a tax of five cents per acre on timber bought without buying the land, and which is shipped out of the state. It is therefore a discrimination against nonresidents requiring them to pay more for lumber or timber coming from this state than is required of residents, as the sawmill operator will inevitably make the "consumer pay the tax." Such an act invites retaliation, and it would be just as permissible for Alabama or Pennsylvania to impose a tax on shippers of coal or iron, the shippers buying the coal or iron without buying the land, and shipping it out of the state as it is for Mississippi to impose the tax in question. Almost every state has an abundance of some article of commerce not found in all states alike, one of Mississippi's being lumber, and if each were permitted to enact laws like the one in question, great confusion, prejudice and ill-will would result, and interstate commerce would soon become restricted, if not altogether prohibited. Each state would indeed be a law unto itself, in so far as articles shipped from the state are concerned. As the tax is not due until the business begins, the business of buying the timber without buying the land and shipping it out of the state, and as the moment the timber or lumber leaves the state, or the moment that it is placed aboard the cars for its final destination out of the state, it become interstate commerce, it follows that it is a tax, an occupation tax, if you will, upon interstate commerce. The right to tax carries the right to confiscate or prohibit, and if five cents per acre can be thus imposed, then so can $100 per acre, or any amount within the discretion of the legislature, or the business can be prohibited altogether. If the legislature cannot tax articles that are to be brought within the state, or the occupation of bringing goods within the state, neither can it tax

articles that are shipped out of the state, nor the occupation of shipping goods out of the state. One is the corollary of the other, and both are a tax on interstate commerce. Hence, the act in question violates article 1, sec. 8, clause 3 of the constitution of the United States; which provides that "congress shall have power to regulate commerce . . . among the several states," and is therefore void. *Crutcher* v. *Kentucky;* 141 U. S., 47 (35 L. Ed., 649); *Lying* v. *Michigan,* 135 U. S., 161 (L. Ed., 151); *Leloup* v. *Mobile,* 127 U. S., 640 (L. Ed., 311); *Walling* v. *Michigan,* 116 U. S., 446; *Brennan* v. *Titusville,* 153 U. S., 287 (L. Ed., 719); *Idaho* v. *Evans,* 7 L. R. A., 288; *Ames* v. *People,* 55 Pac. Rep., 725; *Startford* v. *Council,* 20 So. Rep., 127; *Mfg. Gas Co.* v. *Nat. Gas Co.,* 53 L. R. A., 134; Colley Con. Lim., 7 ed., 153.

CALHOON, J., delivered the opinion of the court.

Appellant declined to answer or plead further on a judgment sustaining a demurrer to his declaration, and the whole question, on his appeal from that action, is as to the validity or invalidity of sec. 8, ch. 43, p. 44, Laws 1900, which act is as follows:

"Section 8. On each land timber mill company, or corporation, or individual in each county, who buys timber without buying the land, for 500 acres, or less, $25. Same, for 1,000 acres, or more than 500 acres, $50, and so on at the rate of $25 on each 500 acres in each county so purchased; *provided, that* this does not apply to sawmill operators who do not ship timber or lumber out of the state."

The declaration seeks to recover from the Mississippi Lumber Company this privilege tax. It was demurred to, the demurrer sustained, and the revenue agent declined to amend or plead further, and appeals to this court.

The proviso makes the section void. It violates sec. 112 of our constitution, declaring that "taxation shall be uniform and equal throughout the state." It is a discrimination between

subjects of property ownership of the same class. *Adams* v. *Kuykendall*, 83 Miss., 571 (35 So. Rep., 830). There is no inherent difference between timber for home sale and timber for export, and there can be no valid classification between the two. *Adams* v. *Kuykendall*, 83 Miss., 371 (s. c., 35 So. Rep., 830); *Mississippi Mills* v. *Cook*, 56 Miss., 40; *Adams* v. *Bank*, 75 Miss., 701 (23 So. Rep., 395); *State* v. *Moore* (N. C.), 18 S. E., 342 (22 L. R. A., 472); *State* v. *Pennoyer* (N. H.), Atl., 878 (5 L. R. A., 709); *Ballard* v. *Mississippi Cotton Oil Co.*, 81 Miss., 507 (34 So. Rep., 533; 62 L. R. A., 407). Very many other cases might be cited.

Moreover, this section is practically a tax on interstate commerce. The right of any citizen of any state to take himself or his property out of or into any state cannot be taken away, nor can it be hampered by discriminative taxation in any degree whatsoever. This right is universal, subject, only, to regulations in the exercise of the police power to conserve health or morals, and even these must not be arbitrarily exercised to work discrimination. Tiedeman, State and Fed. Control, vol. 4, pp. 490, 491; Id., vol. 2, pp. 1032-1038; *State* v. *Moore*, 113 N. C., 704 (18 S. E., 342; 22 L. R. A., 472); *State* v. *Wagener*, 69 Minn., 207 (72 N. W., 67; 38 L. R. A., 677; 65 Am. St. Rep., 565); *Welton* v. *Missouri*, 91 U. S., 275 (23 L. Ed., 347); *State* v. *Bengsch*, 170 Mo., 81 (70 S. W., 710); *State* v. *Mitchell*, 97 Me., 66 (54 Atl., 887; 94 Am. St. Rep., 481); *State* v. *Montgomery* (Me.), 47 Atl., 165 (80 Am. St. Rep., 389, 390); 2 Tucker on the Const., 528-534, 552.

The foregoing authorities will be found to be based, some on state constitutional uniformity clauses, and some on the interstate commerce clause of the constitution of the United States, and some on the fourteenth amendment of this constitution, forbidding the abridgment of the privileges or immunities of citizens of the United States, or the denial of the equal protection of the laws. The bar can examine them at leisure.

The only decision we find at all infringing on the proposi-

tion of the right of free egress and regress of property out of and into a state is that of *Geer* v. *Connecticut*, 161 U. S., 519 (16 Sup. Ot., 600; 40 L. Ed., 793). In that decision Justices Brewer and Peckham took no part, and Justices Field and Harlan dissented. However, the opinion there distinctly recognizes the principles we have announced, but makes a differentiation as to game birds killed and sought to be transported to another state, against a law forbidding their transportation, in a learned dissertation on the proprietorship by the state, in its sovereignty, of all animals *ferae naturae* for the benefit of all the people as a food supply.

The chief justice concurs in the conclusion, but prefers to put it solely on the ground that the effect of the legislation is to deny to appellee the equal protection of the laws.

*Affirmed.*